**IN RE: THE HONORABLE LEON A. KENDALL**

S. Ct. Misc. No. 2009-0025
Supreme Court of the Virgin Islands
October 12, 2011

SAMUEL HALL, JR., ESQ., Hall & Griffith, St. Thomas, USVI, *Attorney for the People of the Virgin Islands*[1].

---

[1] This Court, in a September 16, 2009 Order, appointed Attorney Hall — a disinterested private attorney — to serve as the special prosecutor in this matter because, given the procedural history of this case, allowing a prosecutor employed by the Department of Justice to prosecute this matter could be perceived as a conflict of interest by the public. *See In re Special Proceedings*, 373 F.3d 37, 43 (1st Cir. 2004) (affirming appointment of private counsel as special prosecutor because use of government prosecutor "would not necessarily have banished the public impression of a conflict in this case."). *See also Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 811, 814, 107 S. Ct. 2124, 95 L. Ed. 2d 740, (1987) (explaining that prosecutors of contempt action must be "guided solely by their sense of public responsibility for the attainment of justice" and that selection of a prosecutor must not

HOWARD M. COOPER, ESQ., Todd & Weld LLP, Boston, Massachusetts, *Attorney for Leon A. Kendall.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(October 12, 2011)

PER CURIAM. This Court, in an August 13, 2009 Order, required Leon A. Kendall, a judge of the Superior Court,[2] to show cause as to why he should not be held in indirect criminal contempt.[3] On December 18,

---

"create[] an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general.").

[2] While this matter was pending, Kendall retired from his position as a Superior Court judge at the conclusion of his term in October 2009.

[3] The August 13, 2009 Order required, in pertinent part,

that Judge Leon A. Kendall . . . SHOW CAUSE . . . why he should not be held in indirect criminal Contempt of Court for

(1) Obstructing the administration of justice through

a. inflammatory remarks and other characterizations in his July 7, 2009 opinion that appear calculated and intended to prejudice this Court in public estimation, destroy or call into doubt this Court's function and position as the highest local court in the Virgin Islands, and to reduce confidence in the administration of justice in this jurisdiction; and

b. purporting to review the validity and legality of this Court's May 13, 2009 opinion and order, including, but not limited to, stating that the issuance of this Court's order was "clearly improper," that its conclusions "make[] no sense" and are "erroneous," and that this Court's mandate should be given "no credence," despite this Court's status as the highest local court in the Virgin Islands;

(2) Failing to comply with this Court's May 13, 2009 opinion and order by

a. refusing to schedule the matter for trial and proceeding to trial in the absence of a valid plea disposition;

b. refusing to consider a change of venue or a continuance to minimize pre-trial publicity in the underlying matter; and

c. recusing himself from the matter below for the purposes of avoiding future compliance with this Court's mandate, leading to additional scheduling delays;

(3) Misbehaving in his official transactions as an officer of the court by

a. failing to comply with this Court's May 13, 2009 opinion and order in violation of Rule 1.1 of the American Bar Association's Model Rules of Judicial Conduct, made applicable to Judge Kendall pursuant to Supreme Court Rule 205 and Virgin Islands Bar Association Bylaw X.8(D);

b. calling into question, through his July 7, 2009 opinion, the integrity of the Virgin Islands judiciary through inflammatory language directed at this Court and con-

2009, this Court appointed the Honorable Edgar D. Ross, a retired Superior Court judge, to serve as a Special Master, with the authority to, among other things, conduct a show cause hearing and make and submit to this Court proposed findings of fact and conclusions of law. After presiding over the show cause hearing and considering the parties' submissions, the Special Master has recommended that this Court acquit Kendall of all charges. After an exhaustive review of the record, including a transcript of the show cause hearing, a video of the majority of the proceedings, and numerous documents entered into evidence by both parties, we accept in part and reject in part the Special Master's findings, conclusions, and recommendations.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts and circumstances from which this matter arises stem from a March 9, 2009 petition for writ of mandamus filed in this Court by the People of the Virgin Islands. In a May 13, 2009 Opinion and Order, this Court granted the petition and issued a writ of mandamus to Kendall — the nominal respondent to the mandamus action — directing that his oral and written orders compelling the People to enter into a plea bargain with Basheem Camal Ford and Jermaine S. Paris — the defendants in the underlying Superior Court case — were reversed and that he conduct future proceedings in that case in a matter consistent with the May 13, 2009 Opinion. *See In re People of the V.I.*, 51 V.I. 374 (V.I. 2009). Almost two months after the issuance of that opinion and almost one month after this Court issued its June 10, 2009 mandate, on July 7, 2009, Kendall issued a thirty-one page opinion, designated as "for publication," in which he, among other things, made numerous inflammatory remarks about this Court, stated that this Court's issuance of a writ of mandamus "was

cluding that this Court's May 13, 2009 opinion and order was "clearly improper," that its conclusions "make[] no sense" and are "erroneous," and that this Court's mandate should be given "no credence," in violation of Rule 1.2 of the American Bar Association's Model Rules of Judicial Conduct, made applicable to Judge Kendall pursuant to Supreme Court Rule 205 and Virgin Islands Bar Association Bylaw X.8(D);

c. refusing to hear a matter properly assigned to him by recusing himself for reasons not authorized by law, in violation of Rule 2.11 of the American Bar Association's Model Rules of Judicial Conduct, made applicable to Judge Kendall pursuant to Supreme Court Rule 205 and Virgin Islands Bar Association Bylaw X.8(D)[.]

clearly improper," found that the writ had been "issued to facilitate the Prosecution's blatant misconduct and perpetrate a fraud on the [Superior] Court," and recused himself from the case. *See People v. Ford*, 52 V.I. 30 (V.I. Super. Ct. 2009) (hereinafter "July 7, 2009 Opinion").

On August 13, 2009, this Court required Kendall to show cause as to why he should not be held in indirect criminal contempt for obstructing the administration of justice, failing to comply with the May 13, 2009 Opinion and Order, and for misbehaving in his official transactions as an officer of the court. Subsequently, Kendall filed a motion to dismiss, which the Special Master, shortly after his appointment, proposed that this Court deny — a recommendation which this Court accepted — and thereafter scheduled a show cause hearing for April 12, 2010.

At the April 12, 2010 hearing, the Special Master heard opening statements, accepted the parties' request to take judicial notice of numerous exhibits, and allowed the People to present its case. The People called, as its first witness, Assistant Attorney General Jesse M. Bethel, who was counsel for the People in the *In re People* matter. Due to the length of both direct and cross-examination of Bethel, the Special Master authorized a recess and allowed the hearing to reconvene the following day. Once cross-examination of Bethel concluded on April 13, 2010, the People called Janet Lloyd, the Superior Court's librarian, who primarily testified on direct examination to the authenticity of Kendall's July 7, 2009 Opinion and the significance of its "For Publication" designation. Lloyd was then cross-examined by Kendall. Thereafter, the People called its final witness, Stanley Perez, a Marshal for the Superior Court.

After the People rested its case, Kendall orally moved for a judgment of acquittal. However, recognizing that this Court's December 18, 2009 Order only authorized the Special Master to make proposed recommendations with respect to dispositive motions, Kendall requested that the Special Master recess the show cause hearing to allow the parties to file proposed findings of fact and conclusions of law, for the Special Master to produce his written recommendation, and for this Court to then review the Special Master's recommendation. The Special Master granted Kendall's request, and recessed the hearing pending these events.

On April 16, 2010, both Kendall and the People submitted their proposed findings of fact and conclusions of law to the special master. On the same day, Kendall filed a written motion for judgment of acquittal or, in the alternative, a mistrial, which — among other things — argued that

the First Amendment prohibited this Court from holding him in contempt based on the contents of the July 7, 2009 Opinion absent a finding that its issuance created a "clear and present danger," and that the People had introduced insufficient evidence to sustain the charges. The People filed its opposition to Kendall's motion on April 19, 2010. On May 4, 2010, the Special Master submitted his proposed findings of fact and conclusions of law, and recommended that this Court deny Kendall's motion for judgment of acquittal on the grounds that the July 7, 2009 Opinion was not protected by the First Amendment.

On May 18, 2010, Kendall timely filed an objection to the Special Master's recommended disposition, in which he contended, among other things, that the Special Master erred in recommending that this Court deny his April 16, 2010 motion for judgment of acquittal because the Special Master's "[r]ecommendation is fatally defective for ignoring, and failing even to address, the controlling [c]onstitutional principles that govern the use of the contempt power against speech," (Obj. at 2), and that the People failed to present evidence sufficient to establish beyond a reasonable doubt that Kendall is guilty of criminal contempt. Specifically, Kendall contended that the People were required to prove that the July 7, 2009 Opinion presented a "clear and present danger of [the] obstruction of the administration of justice," (Obj. at 2-3), and that the Special Master had only found that the remarks in Kendall's July 7, 2009 Opinion "prejudice this Court in public estimation," tend to "destroy or call into doubt this Court's function and position as the highest local court in the Virgin Islands," and "reduce confidence in the administration of justice in the jurisdiction," which Kendall also argued were threats "to the Court's dignity and public esteem, *not* to the administration of justice." (Obj. at 4 (quoting Rec. at 4).) But in a July 16, 2010 Order, this Court expressly rejected Kendall's argument that the First Amendment required application of the clear and present danger standard. *In re Kendall*, S. Ct. Misc. No. 2009-0025, 2010 V.I. Supreme LEXIS 73, at *11 (V.I. July 16, 2010). In addition, the July 16, 2010 Order adopted the Special Master's holding that the People introduced evidence sufficient for a reasonable trier of fact to hold Kendall in indirect criminal contempt on all three counts, as well as the Special Master's recommendation that Kendall's motion for mistrial be denied.

The Special Master resumed the show cause hearing on August 18, 2010. At the hearing, Kendall, through his counsel, introduced four

documents from the *Ford* and *Paris* matters into evidence, and then rested his case. Once the defense rested, the Special Master heard closing arguments, requested both parties to submit proposed findings of fact and conclusions of law, and adjourned the hearing. After considering the parties' filings, the Special Master submitted his recommended findings of fact and conclusions of law on December 22, 2010. In the December 22, 2010 Recommendation, the Special Master found that the People had proved all of the conduct alleged in count one of the August 13, 2009 Order beyond a reasonable doubt. However, the Special Master explained that he now agreed with Kendall that the clear and present danger standard applied to count one, and that the People had to therefore also prove beyond a reasonable doubt that Kendall's July 7, 2009 Opinion actually obstructed the administration of justice. Ultimately, the Special Master concluded that the People failed to prove an actual obstruction, and recommended that this Court acquit Kendall on this count. With respect to count two, the Special Master rejected Kendall's argument that the May 13, 2009 Opinion and Order in *In re People* was not directed to him, but recommended that this Court find that the People failed to prove beyond a reasonable doubt that Kendall recused himself to avoid compliance with this Court's mandate because the evidence was equally consistent with the conclusion that Kendall recused himself because he was biased against Bethel. Finally, the Special Master recommended that this Court acquit Kendall on count three for the same reasons.

On December 30, 2010, the People filed an objection to the Special Master's December 22, 2010 Recommendation, which Kendall opposed on January 10, 2011. In response to Kendall's January 10, 2011 motion for a hearing, this Court required the parties to file briefs as to whether this Court should adopt the December 22, 2010 Recommendation. After the parties submitted their briefs, this Court, in a June 15, 2011 Order, required the parties to inform this Court as to (1) whether they wished for this Court to hold a hearing or submit the case on the present record, and (2) whether they desired supplemental briefing on the effect, if any, of the United States Supreme Court's recent decision in *Nevada Commission on Ethics v. Carrigan*, 564 U.S. ___, 131 S. Ct. 2343, 180 L. Ed. 2d 150 (2011). On June 24, 2011 and June 28, 2011, respectively, Kendall and the People both notified this Court that they did not desire for this Court to hold a hearing, and that they did not believe supplemental briefing was necessary. Accordingly, this Court, in a June 30, 2011 Order, stated that

it would consider the instant matter based on the parties' briefs and the record.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■■ It is well established that this Court, as the highest local court in the Virgin Islands, has both the inherent and statutory authority "to protect its appellate jurisdiction" and "to issue all writs necessary to the complete exercise of its duties and jurisdiction," including the right to issue and enforce orders granting a writ of mandamus. 4 V.I.C. § 32(b); *see also* 4 V.I.C. § 243(4) ("Every court shall have power . . . [t]o compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in all actions, or proceedings pending therein."); 4 V.I.C. § 281 ("Every judicial officer shall have power . . . [t]o compel obedience to his lawful orders."); 14 V.I.C. § 581; *In re Burke*, 50 V.I. 346, 350-51 (V.I. 2008). "Contempt is the common method of enforcing orders in the law actions of mandamus, prohibition, and habeas corpus." *Burton v. Wayne Circuit Judge*, 325 Mich. 159, 37 N.W.2d 899, 902 (1949). *See also United States v. Providence Journal Co.*, 485 U.S. 693, 701-02, 108 S. Ct. 1502, 99 L. Ed. 2d 785 (1988) (recognizing a court's inherent authority to "initiate a criminal contempt proceeding for disobedience of its order"); *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987) ("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders."). Moreover, the Virgin Islands Legislature has recognized this inherent authority through codifying the crime of contempt:[4]

> Every court of the Virgin Islands shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other as —

---

[4] This Court recognizes that the Supreme Court of Pennsylvania has recently held that statutes codifying the offense of criminal contempt violate the separation of powers doctrine to the extent that such statutes purport to restrict a court's inherent authority to impose a punishment. *See Com. v. McMullen*, 599 Pa. 435, 961 A.2d 842, 849-50 (2008). However, because this Court cites to 14 V.I.C. § 581 only insofar as that statute provides a succinct summary of this Court's inherent power, this Court's reference to 14 V.I.C. § 581 should not be construed as a holding as to its constitutionality.

(1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) misbehavior of any of its officers in their official transactions; or

(3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

14 V.I.C. § 581. Finally, it is well established that trial court judges do not possess immunity from being held in contempt by a higher court, for "[s]uperior courts may enforce their judgments, decrees, mandates, and orders and compel obedience thereto by inferior courts by process of contempt." 17 C.J.S. *Contempt* § 57 (collecting cases). *See also Contempt for Disobedience of Mandamus*, 30 A.L.R. 148 (1924) (noting that the practice of appellate courts holding trial court judges in contempt for failure to comply with a higher court's mandamus order dates back to at least 1810) (collecting cases). Accordingly, this Court possessed jurisdiction to initiate these indirect criminal contempt proceedings.

"[B]ecause this Court exercises original jurisdiction over this criminal contempt matter, our review of the Special Master's findings of fact and conclusions of law . . . must be *de novo.*" *Kendall*, 2010 V.I. Supreme LEXIS 73, at *5-6 (citing *Annenberg v. Commonwealth*, 562 Pa. 581, 757 A.2d 338, 342-43 (2000)).

### B. Obstruction of the Administration of Justice

 The August 13, 2009 Order charged Kendall with obstruction of the administration of justice[5] through

a. inflammatory remarks and other characterizations in his July 7, 2009 opinion that appear calculated and intended to prejudice this Court in public estimation, destroy or call into doubt this Court's function and position as the highest local court in the Virgin Islands, and to reduce confidence in the administration of justice in this jurisdiction; and

---

[5] "Obstruction of the administration of justice is not to be confused with obstruction of justice. Justice may be obstructed by mere inaction, but obstruction of the administration of justice requires something more — some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *United States v. Warlick*, 742 F.2d 113, 115-16 (4th Cir. 1984) (citing *Ex parte Hudgings*, 249 U.S. 378, 383, 39 S. Ct. 337, 63 L. Ed. 656 (1919)).

 b. purporting to review the validity and legality of this Court's May 13, 2009 opinion and order, including, but not limited to, stating that the issuance of this Court's order was "clearly improper," that its conclusions "make[] no sense" and are "erroneous," and that this Court's mandate should be given "no credence," despite this Court's status as the highest local court in the Virgin Islands.

(J.A. 1571-72.)[6] In his December 22, 2010 Recommendation, the Special Master expressly found that the People met its high burden with respect to these allegations:

---

[6] The August 13, 2009 Order identified the following passages from Kendall's July 7, 2009 Opinion as those that constituted the alleged obstruction of the administration of justice:

In a decision *primarily based on the erroneous finding* that the "trial court 'ignored clear, binding precedent from a court of superior jurisdiction' when it issued its January 30, 2009 Order," the Supreme Court issued a Writ of Mandamus effectively mandating that the Court either enforce a plea offer not originally tendered by the prosecution or proceed to trial.

. . . .

II. *Improper Issuance of Writ of Mandamus*

. . . .

While noting that the [Superior] Court is bound by the decisions of the Third Circuit, the Supreme Court ruled that in rendering its decisions, the decisions of the Third Circuit are merely persuasive. *See, In re People of the Virgin Islands, supra* at 389, n.9. *This ruling makes no sense.* The Revised Organic Act of 1954, as amended, (48 U.S.C. § 1561 *et seq.*) is the Territory's constitution. Section 23 of the Act (48 U.S.C. § 1613) provides for the establishment of the V.I. Supreme Court and clearly states that "for the first fifteen years following the establishment of the appellate court authorized by Section 1611(a) of this title, the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had." (emphasis added) The V.I. Supreme Court was established in 2004 and commenced its operations in 2007. Based upon the plain language of Section 23, the U.S. Court of Appeals for the Third Circuit has been and continues to be the highest Court in the Territory, as (sic) least for the next ten (10) years. *As such, its decisions are still binding precedent and will continue to be so as a matter of law for both the Superior Court and the Supreme Court unless Congress determines otherwise.*

. . . .

Clearly, in light of the [Superior] Court's reliance on binding authority in this Circuit in deciding to enforce the plea agreement, the [Superior] Court was correct in applying "traditional contract law principles to the matter." *Thus, the Supreme Court's conclusion that the Court erred in doing so makes no sense. While the Supreme Court may disagree with the [Superior] Court's interpretation of those contract law principles, it*

*certainly is not entitled, based on settled law in this jurisdiction; to conclude that such principles do not apply in considering whether plea agreements are enforceable in the Territory.*

*Similarly erroneous* was the Supreme Court's conclusion that the "Court did not consider the settled law in this jurisdiction that the People had the unrestricted right to withdraw the plea offer prior to entry of the judgment accepting the plea, absent a finding of detrimental reliance." *In re People of the Virgin Islands, supra* at 389, citing *Scotland, supra*. In fact, the [Superior] Court did rely on *Scotland*, a fact admitted by the Supreme Court when it stated that the [Superior] Court "did consider the issue of detrimental reliance in its February 20, 2009 Opinion and Order" but "did not perform such an analysis at the January 30, 2009 hearing when it issued its oral order requiring specific performance." *Id. Again, in light of its own admission, the Supreme Court's conclusion makes no sense.* According to the Supreme Court, "the detrimental analysis should have been made at the date it decided to enforce the plea agreement" i.e. January 30, 2009. *Id.* No authority is cited for this proposition.

*Again, while the Supreme Court may disagree with the timing of the [Superior] Court's detrimental reliance analysis, it is not entitled to conclude that such an analysis did not take place or, if it did, it must be performed at a particular time* without citing any legal authority in support thereof and, based upon that conclusion, further conclude that "the trial court ignored clear, binding precedent from a Court of superior jurisdiction when it issued its January 30, 2009 Order." *Id.*

. . . .

In fact, given the case's procedural posture, *there was nothing improper about conducting the detrimental reliance analysis after the Friday, January 30, 2009 Order.*

. . . .

While the Supreme Court was technically correct in concluding that the Defendants did not detrimentally rely on the People's plea offer as of January 30, 2009, it is clear that the validity of that offer and Defendants' acceptance thereof were part of an evolving rather than static process. As such, to conclude, as the Supreme Court does, that in performing its detrimental reliance analysis, the Court should have ignored that process and instead strictly adhere to a rigid deadline is to elevate form over substance and have the [Superior] Court "bury its head in the sand like an ostrich" at the expense of that evolutionary process.

. . . .

The Supreme Court's ruling is at odds with its own view that it is entitled to consider and, indeed, speculate about subsequent events in determining its appellate jurisdiction. *Id.* at 384. ("We must consider whether subsequent events may ripen the prematurely filed appeal . . .") ("In the event that the Defendants do not withdraw from the plea agreement . . . and the trial Judge accepts the plea agreement . . . the Superior Court will adjudicate the Defendants guilty . . . such a future Order would have the effect of dismissing all or part of the Information.") *Id.* Clearly, *there is no rational basis for the Supreme Court to claim the right to consider and speculate about subsequent events in determining its appellate jurisdiction* while denying the [Superior] Court the right to consider such events in performing its detrimental reliance analysis, especially where, as here, those events are inextricably intertwined with Defendants' acceptance of the original plea offer and, ergo, their admission of guilt.

900

■■■■

. . . .

In light of the foregoing, *no credence can be accorded the Supreme Court's erroneous conclusions* regarding the [Superior] Court's alleged failure to adhere to legal precedent by applying contract principles in deciding the validity of the plea agreement or in performing its detrimental reliance analysis. *Accordingly, the [Superior] Court having correctly applied the law of the Circuit, there was nothing for the Supreme Court to correct by Mandamus, hence its issuance of the Writ was improper.*

. . . .

*Having erroneously premised its Writ of Mandamus on the [Superior] Court's alleged failure to following binding precedent*, the Supreme Court proceeded to effectively mandate that the [Superior] Court consider the People's substituted offer to the Defendants to plead "Guilty" to "Voluntary Manslaughter."

. . . .

*Having rejected the plea agreement, the only other option, according to the Supreme Court, was to proceed to trial of the matter. Such a trial, however, would be a travesty of justice and a fraud upon the [Superior] Court.*

. . . .

Despite the deference that should be accorded a trial court with respect to its factual findings, the Supreme Court held that the [Superior] Court could not find juror partiality based solely upon the extensive pre-trial publicity surrounding Defendant's acceptance of the People's plea offer to "Involuntary Manslaughter" and, ergo, their admission of culpability for Officer Frett's death.

. . . .

Accordingly, the [Superior] Court did rely on evidence in the record and *therefore there is no merit to the Supreme Court's finding* that the [Superior] Court "acted contrary to clear binding precedent from the United States Supreme Court and the Third Circuit when it premised its decision on evidence not in the record." *In re People of the Virgin Islands, supra* at 391-92. *Indeed, once again, the Supreme Court's ruling makes no sense*. Even as it states that the [Superior] Court premised its decision on evidence not in the record, [i]t refers to that very evidence when it "note[s] that the trial Judge found that '[t]he aforementioned articles appear[ed] in the Virgin Islands Daily News, the St. Thomas Source and the St. John Source' and that these publications were 'three of the most prominent media sources in the Territory' ". *In re People of the Virgin Islands, supra*, Fn II (emphasis added). Inasmuch as the People appealed the Court's Order denying their Motion to Reconsider, that Order included Defendants' response to the Motion which included their Exhibit B. This Exhibit was clearly part of the record before the [Superior] Court and on appeal, so that the Supreme Court had to have known that it was relied upon by the [Superior] Court in its Order denying the Motion when it "found that '[t]he aforementioned articles appeared in the Virgin Islands Daily News, etc'."

. . . .

*In its opinion, the Supreme Court erroneously held* that the [Superior] Court did not take judicial notice of media reports and "premised its entire analysis on multiple newspaper articles . . . that were not entered into the record by the parties." *In re People of the Virgin Islands, supra*, at 389-90. Had the Supreme Court reviewed "Defendant's Memoran-

dum of Law in Response to Reconsideration of the Granting of the Emergency Motion on Behalf of Basheem Camal Ford To Enforce Plea Agreement," filed on February 6, 2009, it would have noted that the subject articles appear as Exhibit B. Additionally, Defendants correctly noted on page 5 of their Memoranda of Law in response to reconsideration of the granting of the emergency motions on behalf of Defendants to enforce plea agreements that TV2, one of only two (2) local news broadcasts in the Territory, broadcasted reports detailing Defendants' desire to plead "Guilty" to "Involuntary Manslaughter."

. . . .

*Moreover, none of the cases cited by the Supreme Court to support its finding that the [Superior] Court was required to conduct a voir dire of the jury to determine the degree and nature of their exposure to the pre-trial publicity applies here. See In re People of the Virgin Islands, supra,* at 391. Specifically, none involved a Defendant who had effectively admitted guilt prior to trial. None involved the admission of such guilt for the death of a veteran and prominent Police officer. None involved the admission of such guilt in a very small Territory surrounded by water and with an equally small population. None included the widespread publicity surrounding such an admission in such a small Territory and the heightened scrutiny that would naturally attend such an admission given the high profile nature of the crime and the victim. *Because it failed to appreciate that it was considering a "clean slate" here in the Territory, the Supreme Court relied on authority that was wholly inapposite.*

. . . .

(b) The curative measures suggested by the Supreme Court are not available to Defendants

The Supreme Court stated that the Court should have considered other curative measures such as change of venue. *In re People of the Virgin Islands, supra* at 391-92. In its Order of February 20, 2009 and based upon the unique circumstances presented in this case, the [Superior] Court considered and rejected a change of venue as a curative measure. *In the absence of any showing by the Supreme Court that that finding was clearly erroneous, the Supreme Court should have deferred to the Court's findings relative thereto as the fact finder in this matter.*

. . . .

The Supreme Court also concluded that the Court could continue the matter until the threat abates. *Id.* (citing *Sheppard v. Maxwell, supra* at 384 U.S. 333, 86 S. Ct. 1507, 1522, 16 L. Ed. 2d 600). The [Superior] Court is unable to reconcile such conduct with upholding Defendants right to a speedy trial, a right which neither Defendant has waived. *See*, U.S. CONST. Amend. VI. ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"). Thus, constantly continuing this matter to avoid substantially prejudicial pre-trial publicity would surely be contrary to the well-settled law in the United States.

Moreover, it does not appear that the threat will abate. Constant media attention is assured given the high profile nature of the case in the Territory. As noted heretofore, the threat was exacerbated on May 13, 2009 when the Supreme Court issued its Opinion. The resulting news reports came almost three (3) months after the [Superior] Court rendered its Order on February 20, 2009. Thus, it appears that the curative measure of

Unhesitantly and beyond any reasonable doubt, the Special Master finds therefrom that Judge Kendall made inflammatory remarks and characterizations about the Supreme Court of the Virgin Islands that appeared calculated and intended to prejudice the Court in public estimation, destroy or call into doubt this Court's function and position as the highest local court in the Virgin Islands, and to reduce confidence in the administration of justice in this jurisdiction. Additionally, the Special Master finds beyond a reasonable doubt that Judge Kendall purported to review the validity and legality of the Court's opinion and order.

(J.A. 1426-27.) The People agree with this portion of the December 22, 2010 Recommendation in its brief, while Kendall, in his brief, objects to this finding on the grounds that his statements "consisted of nothing more than expressing reasoned disagreement on an important issue of law." (Kendall Br. 18.) However, this Court, having independently reviewed the record, agrees

---

continuance is also unavailable to Defendants due to the media attention that has been garnered and will continue to be garnered by these proceedings.
. . . .

It is axiomatic that the Writ of Mandamus is an Extraordinary Writ which is issued only in those limited situations when the relief sought is extraordinary. *Where, as here, the Writ was apparently sought and issued to facilitate the Prosecution's blatant misconduct and perpetrate a fraud on the [Superior] Court, such relief can hardly be deemed to be ordinary, much less extraordinary. Indeed, it is contrary to law and all notions of justice.*

Moreover, inasmuch as the Court made its decision to enforce the original plea agreement based on well-settled principles enunciated by the U.S. Supreme Court and the Third Circuit, *the Supreme Court clearly erred in its conclusion that the Court failed to do so because it failed to recognize and appreciate the unique facts presented in this case. Because the Writ was premised on this and other erroneous conclusions, its issuance was clearly improper.* However, assuming, arguendo, it was properly issued, to effectively mandate that this Court preside over a trial in the face of blatant and widespread prosecutorial misconduct bordering on criminality is to mandate that it violate its legal and ethical obligations. Such a violation is compounded by the virtual denial of Defendants' 6th Amendment right to trial by a fair and impartial jury because the widespread publicity that resulted and continues to result from Defendants' admission of guilt for Officer Frett's death, has virtually foreclosed the selection of such a jury in this very small population.

*Ford*, 52 V.I. at 38-59 (emphases added; footnotes omitted).

that the People met its burden,[7] and that Kendall's remarks rose far above the level of "reasoned disagreement."[8] Therefore, this Court accepts and adopts this portion of the December 22, 2010 Recommendation.[9]

Nevertheless, the Special Master ultimately chose to recommend that this Court acquit Kendall on the basis that the First Amendment provided limited protection for Kendall's conduct, and therefore required the People to prove the additional element that an actual obstruction of the administration of justice occurred:

> [I]n the matter *sub judice*, the charges brought against Judge Kendall were based on the contents of his memorandum opinion. As such, Judge Kendall retains limited First Amendment protection for

---

[7] As explained in greater detail below in the discussion of the portion of the August 13, 2009 Order charging Kendall with a failure to comply with the May 13, 2009 Opinion and Order, the conduct identified in the August 13, 2009 Order as 1(a) and 1(b) each represent a separate basis for holding Kendall in criminal contempt, and thus the People need only prove 1(a) *or* 1(b) to obtain a conviction for indirect criminal contempt based on an obstruction to the administration of justice. *See also United States v. Moreno-Florean*, 542 F.3d 445, 451 (5th Cir. 2008) ("[I]f the indictment alleges elements in the conjunctive, the defendant can be convicted if the evidence establishes any set of disjunctive elements that together constitute the criminal offense.") (citations omitted). However, the Special Master found that the People proved both 1(a) and 1(b) beyond a reasonable doubt, but recommended that this Court acquit Kendall solely because he believed an additional analysis under the First Amendment was required.

[8] To give just one example, this Court notes that, in the July 7, 2009 Opinion, Kendall stated that this Court issued its writ of mandamus "to facilitate the Prosecution's blatant misconduct and perpetrate a fraud on the [Superior] Court." *Ford*, 52 V.I. at 59.

[9] We recognize that "[t]he element of willfulness . . . is an essential component of the crime and distinguishes civil from criminal contempt," and therefore "must be proved beyond a reasonable doubt." *Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.*, 893 F.2d 605, 609 (3d Cir. 1990) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S. Ct. 497, 93 L. Ed. 599 (1949)). While the Special Master did not use the words "willful," "willfully," or "willfulness" in the pertinent portion of his December 22, 2010 Recommendation, we find that invocation of such "magic words" was not necessary given the Special Master's finding that the pertinent conduct was "calculated and intended to prejudice the Court in public estimation, destroy or call into doubt this Court's function and position as the highest local court in the Virgin Islands, and to reduce confidence in the administration of justice in this jurisdiction." *See United States v. Dundon*, 349 Fed. Appx. 588, 590-91 (2d Cir. 2009) (absence of "willfully" or other "magic words" not controlling when court's factual findings clearly demonstrate that the requisite intent finding was made). In any event, this Court, having independently reviewed the full record, finds that the People did prove beyond a reasonable doubt that Kendall intended, through issuance of the July 7, 2009 Opinion, to "interrupt the orderly process of the administration of justice." *Warlick*, 742 F.2d at 115-16 (citing *Ex parte Hudgings*, 249 U.S. 378, 383, 39 S. Ct. 337, 63 L. Ed. 656 (1919)).

the statements themselves. However, while the civil proceedings cited by the parties invoked several different standards in ascertaining whether the judges' statements were protected by the First Amendment, in this case, the People had to establish, beyond a reasonable doubt, that the conduct of making the inflammatory remarks and characterizations about the Supreme Court of the Virgin Islands actually constitutes an obstruction of the administration of justice.

(J.A. 1428.) Specifically, the Special Master found that "the First Amendment prohibits the use of the criminal contempt power against speech except in cases presenting a clear and present danger of obstructing the administration of justice." (J.A. 1438.)

Unfortunately, it is not clear on what basis the Special Master arrived at these conclusions. Significantly, the December 22, 2010 Recommendation does not acknowledge that this Court, in its July 16, 2010 Order, had adopted the Special Master's previous recommendation that the statements in the July 7, 2009 Opinion were not protected by the First Amendment, and, consequently, held that the People were not required to meet the "clear and present danger" standard or to otherwise prove that issuance of the July 7, 2009 Opinion caused an actual delay in the *Ford* matter or actually destroyed the public's confidence in the Virgin Islands judicial system and the role of this Court. But, since both the Special Master's May 4, 2010 Recommendation and this Court's July 16, 2010 Order were issued in the context of a motion for judgment of acquittal, while the December 22, 2010 Recommendation relates to the ultimate decision of whether Kendall should be adjudicated guilty or not guilty, this Court shall consider this issue anew without providing any deference to its prior July 16, 2010 Order.

We agree with Kendall that "[a] judge does not surrender First Amendment rights upon becoming a member of the judiciary." *In re Sanders*, 135 Wn.2d 175, 955 P.2d 369, 375 (1998). However, the pertinent issue in this case is not whether judges are generally protected by the First Amendment, but whether the First Amendment immunizes Kendall from criminal punishment for the contents of the July 7, 2009

Opinion.[10] First, we emphasize that this case does not involve a situation where a judge has made inflammatory statements while acting in his capacity as a private citizen. Had Kendall published the exact same statements in a newspaper, made them on a television show, or otherwise uttered them outside of his judicial capacity, there is absolutely no question that they would be entitled to the highest level of First Amendment protection, and the People would have been required to prove an actual obstruction to the administration of justice in order to obtain a conviction on count one. *See, e.g., Scott v. Flowers*, 910 F.2d 201, 211 (5th Cir. 1990) (holding judge's "open letter" to county officials attacking county court and district attorney's office was made in capacity as private citizen and thus protected under First Amendment); *Mississippi Comm'n on Judicial Performance v. Wilkerson*, 876 So.2d 1006, 1011 (Miss. 2004) (holding judge's letter to the editor advocating against gay rights constituted speech fully protected by the First Amendment); *Matter of Hey*, 192 W. Va. 221, 452 S.E.2d 24, 29-30 (1994) (holding judge's offensive comments made on television show fully protected by First Amendment).

However, Kendall did not make these statements in his capacity as a private citizen, but did so in a judicial opinion written while acting in his official capacity as the Superior Court judge presiding over the *Ford* matter, which, at his direction, was posted on the Superior Court's website, published in the Virgin Islands Reports and on Westlaw and LexisNexis, and incorporated into Virgin Islands jurisprudence. As the United States Supreme Court has established in a trilogy of criminal contempt cases — *Bridges v. California*, 314 U.S. 252, 62 S. Ct. 190,

---

[10] *See, e.g., Jenevein v. Willing*, 493 F.3d 551, 560-61 (5th Cir. 2007) (explicitly holding that the content of a judge's speech given from behind the bench in the robe is protected by the First Amendment, even if his use of the trappings of judicial office were not protected by First Amendment); *Halleck v. Berlinger*, 427 F. Supp. 1225, 1241 (D.D.C. 1977) (applying the First Amendment in disciplinary proceeding to comments made from the bench, but finding the particular comments outside of its protection); *Mississippi Comm'n on Judicial Performance v. Boland*, 975 So.2d 882, 891-92 (Miss. 2008) (applying First Amendment to a judge acting in her "capacity as a justice court judge" at a conference seeking certification to start a drug court, but held that First Amendment did not apply because judge's insulting comments were not matters of "legitimate public concern."); *In re Rome*, 218 Kan. 198, 542 P.2d 676, 684 (1975) (holding that "[a]lthough a judge has the right of free speech," any restrictions placed by the code of professional responsibility are acceptable limits and prevent the First Amendment from "exempt[ing] a judge from discipline for proven judicial misconduct.").

86 L. Ed. 192 (1941); *Pennekamp v. Florida*, 328 U.S. 331, 66 S. Ct. 1029, 90 L. Ed. 1295 (1946); and *Gentile v. Nevada*, 501 U.S. 1030, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991) — the "clear and present danger" standard does not apply to all criminal contempt actions in which the First Amendment is implicated. Importantly, "[t]hese cases make it clear that statements about pending cases by *non-lawyers* are protected by the First Amendment under a 'clear and present danger' standard," *Smith v. Pace*, 313 S.W.3d 124, 134 (Mo. 2010) (emphasis added), with a majority of the United States Supreme Court[11] "reject[ing] the contention that the same high standard applies to restrictions on speech by attorneys involved in the pending case" because "[m]embership in the bar is a privilege burdened with conditions," with "lawyers voluntarily accept[ing] a 'fiduciary relationship' to the justice system and hav[ing] 'a duty to protect its integrity.' " *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 430 (Tex. 1998) (quoting *Gentile*, 501 U.S. at 1066, 1071, 1074, 1076). *See also Black v. Blount*, 938 S.W.2d 394, 399-401 (Tenn. 1996) (not applying the clear and present danger standard when attorney is charged with obstruction of the administration of justice). Rather, the *Gentile* majority held that, for attorneys, a rule requiring only a "substantial likelihood" of obstruction is acceptable given the State's increased interest in controlling attorney's speech and the attorney's acceptance of the responsibilities of being a member of the Bar. 501 U.S. at 1074-75. In other words, while the fact that an attorney's speech was impolite and disrespectful and uttered during an official court proceeding does not automatically bring that speech outside the protection of the First Amendment, *see Waters v. Churchill*, 511 U.S. 661, 672, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994) ("The First Amendment demands a tolerance of 'verbal tumult, discord, and even offensive utterance,' as 'necessary side effects of . . . the process of open debate.' "), attorneys are prohibited from using speech as a vehicle for "resisit[ing] a ruling . . . beyond the point necessary to preserve a claim for an appeal." *Gentile*, 501 U.S. at 1071 (collecting cases).

---

[11] As indicated in the *Gentile* syllabus, Justice O'Connor's concurrence, and in Justice Kennedy's opinion itself, Parts I and II of Chief Justice Rehnquist's separate opinion — which commanded the support of five justices and expressly limited the "clear and present danger" standard to non-lawyer speech — is controlling precedent as to the issue of what standard applies to out-of-court statements made by lawyers during pending litigation. *See also* 501 U.S. at 1062.

 Given that judges are not only generally held to higher standards than lawyers, but, when acting in their official capacities, are performing official government functions, it is likely, when a judge is charged with the obstruction of the administration of justice due to the contents of a judicial opinion, that an even lower standard than a "substantial likelihood" of obstruction may apply. *See, e.g., Halleck*, 427 F. Supp. at 1239 ("The ABA Code of Judicial Conduct, adopted by the Joint Committee on Judicial Administration in the District of Columbia, reflects the limits on a judge's right of free speech.") (footnote omitted); *Rome*, 542 P.2d at 684 ("For a judge the right to speak freely is circumscribed by the code of judicial conduct, just as that of the lawyer is subject to the code of professional responsibility, and first amendment rights do not exempt a judge from discipline for proven judicial misconduct."); *cf. Carrigan*, 131 S. Ct. at 2351 ("a legislator has no right to use official powers for expressive purposes"). But it is not necessary for this Court to resolve this issue of first impression, for the portion of the July 7, 2009 Opinion in which Kendall states that this Court issued its writ of mandamus "to facilitate the Prosecution's blatant misconduct and perpetrate a fraud on the [Superior] Court," *Ford*, 52 V.I. at 59, clearly satisfies the "substantial likelihood" standard, in that it does not merely express disagreement with this Court's May 13, 2009 Opinion, but blatantly accuses, without proof, the Justices of this Court of gross dereliction of their sworn duties and of committing illegal acts, and thus called the very integrity of the *In re People* proceedings into question — a case in which Kendall himself had been a party.[12] As the Tennessee Supreme Court succinctly explained in *Black*,

---

[12] In two letters sent to the Clerk of this Court after briefing in this matter concluded, Kendall, through his counsel, referred the United States Supreme Court's decision in *Michigan v. Bryant*, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011) to this Court's attention, and notes that Justice Scalia's dissent in that case — which, among other things, called the majority opinion "[u]tter nonsense," *id.* at 1172 (Scalia, J., dissenting) — is representative of "normal and acceptable judicial discourse to express disagreement in a judicial opinion." However, Kendall fails to acknowledge that the relationship between the nine United States Supreme Court justices — who all sit on the same court and share equal voting power — is fundamentally different from the relationship between the three Justices of this Court and Kendall — who, in the context of the *In re People* proceedings, was not merely a Superior Court judge whose decision had been reversed on appeal, but a party to the mandamus proceeding itself, to whom the May 13, 2009 Opinion and Order was personally directed.

[W]e explicitly hold that criminal contempt of court which obstructs the administration of justice includes all willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute. We also emphasize that disrespectful conduct by an attorney has a greater impact upon the dignity of a court than does disrespectful conduct of a lay person. Public respect for the law derives in large measure from the image which the administration of justice presents. Lawyers play an integral role in the administration of justice and, as such, their conduct can have a great influence upon the extent to which the proceedings are perceived as fair and dignified by jurors, defendants, witnesses, and spectators. Accordingly, a lawyer's allegations of inequity and unfairness are uniquely denigrating to the dignity of the proceedings. . . . [T]he judgment of the Court of Appeals is reversed, and the trial court's judgment finding Blount guilty of two counts of contempt is reinstated.

938 S.W.2d at 401. *See also United States v. Engstrom*, 16 F.3d 1006, 1011 (9th Cir. 1994) ("Although an allegation of judicial bias by a court officer, such as an attorney, necessarily undermines the court's ability to regulate a trial, the same allegation by a non-court officer will not necessarily have the same effect."); *In re Kafantaris*, 2009 Ohio 4814, ¶ 41 (Ohio Ct. App. 2009) (affirming trial court's finding that attorney's statement to jury members, after jury had announced its verdict and been discharged, that they had convicted the wrong man constituted "an unforgivable obstruction to the administration of justice" punishable as criminal contempt because "[i]t called the whole jury trial process into question" and "[t]he obvious proper course of action to contest the verdict is through the appellate process."); *Hirschfeld v. Superior Court*, 184 Ariz. 208, 908 P.2d 22, 26 (Ariz. Ct. App. 1995) ("Conduct like Hirschfeld's . . . lessens the dignity and authority of the court. There are a number of cases which support this conclusion. We pass over, without comment, those many cases in which the conduct actually disrupted or delayed court proceedings. The cases we do rely on all concern misbehavior that occurred while court was in recess."). In other words, the

First Amendment does not bar holding Kendall in indirect criminal contempt for this portion of the July 7, 2009 Opinion.[13]

 We recognize that Kendall contends that many of the authorities this Court has cited for the proposition that the pertinent language in Kendall's July 7, 2009 Opinion were not protected by the First Amendment involved judicial discipline matters rather than criminal contempt cases. But as this Court first noted in its August 13, 2009 Order, there, unsurprisingly, have been very few instances of trial judges being required to show cause by a higher court as to why they should not be held in criminal contempt, and — in the few instances in which this has occurred — none of the judges asserted a First Amendment defense. *See, e.g., In re Reed*, 901 S.W.2d 604, 612-14 (Tex. App. 1995); *State ex rel. Goldsmith v. Marion County Superior Court*, 275 Ind. 545, 419 N.E.2d 109, 112 (1981); *Palmer v. State*, 275 Ind. 128, 418 N.E.2d 530, 532 (Ind. 1981). Moreover, we have been unable to find any authority — and Kendall has not provided us with any — that stands for the proposition that conduct or speech that would not be protected by the First Amendment in the civil context is nevertheless protected by the First Amendment in the criminal context. On the contrary, courts have

---

[13] Nevertheless, even if the higher "clear and present danger" standard applied, this Court would hold that the People have satisfied its burden of proving an actual obstruction, since the record reflects that, on July 17, 2009, Paris filed a motion for extension of time to file a ·petition for writ of certiorari with the Third Circuit, which requested that the Third Circuit review the matter because of Kendall's "scathing and extraordinary attack on the legitimacy of the Supreme Court's decision," and argued that "[t]he nature of the trial court's charge . . . is an independent reason justifying a petition for [writ of] certiorari, and justifying an extension of time" since "[t]he integrity of the administration of justice in the territory has been called into question by the Superior Court's charge that the Supreme Court's decision lacked indicia of legitimacy," which made Third Circuit review "critical in this case." (Paris Mot. 4-5.) Notably, Kendall himself acknowledged in his objection to the Special Master's proposed denial of his motion for judgment of acquittal that "Bethel's testimony, which was uncontradicted, established that the case was not ready to proceed even on the November 23, 2009 trial date set by Judge Carroll . . . because the parties were still awaiting a ruling from the Court of Appeals for the Third Circuit on a petition for writ of certiorari. . . ." (Obj. 7.) Thus, although the Third Circuit ultimately denied certiorari, we would not hesitate to find, beyond a reasonable doubt, that the charges in Kendall's July 7, 2009 Opinion — including his allegation that this Court's "[w]rit was apparently . . . issued to facilitate the Prosecution's blatant misconduct and perpetrate a fraud on the [Superior] Court" — actually disrupted the administration of justice by requiring the parties to not just engage in additional proceedings in the Third Circuit that would not have occurred absent Kendall's conduct, but delay Paris's trial due to the pendency of those proceedings.

universally held that, if speech is unprotected by the First Amendment in the civil context, it may give rise to criminal liability without the need to establish any additional elements, provided that the beyond a reasonable doubt standard is met by the prosecution. *Cf. Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964) (concluding, in criminal libel context, that criminal libel prosecutions are permissible so long as the malice standard of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) — a civil libel case — is met); *Mink v. Knox,* 613 F.3d 995, 1005 n.7 (10th Cir. 2010) ("Civil and criminal libel cases 'are subject to the same constitutional limitations.' ") (quoting *Herbert v. Lando,* 441 U.S. 153, 157, 99 S. Ct. 1635, 60 L. Ed. 2d 115 & n.1 (1979)); *In re Gronowicz,* 764 F.2d 983, 988 & n.4 (3d Cir. 1985) (en banc) (holding that there is "[n]o distinction having any first amendment significance" between criminal libel and civil libel or criminal fraud and civil fraud, for libelous or fraudulent speech both have no First Amendment protection in either the civil or criminal context), *cert. denied sub nom. Gronowicz v. United States,* 474 U.S. 1055, 106 S. Ct. 793, 88 L. Ed. 2d 770 (1986).

For the reasons stated above, we reject the portion of the December 22, 2010 Recommendation that would hold that the People are required to prove a "clear and present danger" or an actual obstruction to the administration of justice. Accordingly, this Court finds Kendall guilty of indirect criminal contempt through obstruction of the administration of justice.

### C. Failure to Comply with May 13, 2009 Opinion and Order

The August 13, 2009 Order also accused Kendall of failing to comply with this Court's May 13, 2009 Opinion and Order. (J.A. 1572.) In his December 22, 2010 Recommendation, the Special Master found that the People had proved, beyond a reasonable doubt, that Kendall was aware that the May 13, 2009 Opinion and Order had been directed towards him personally, and was aware that this Court had instructed him to proceed to trial and, to minimize pre-trial publicity, consider a continuance or a change of venue:

> Judge Kendall's argument that the Supreme Court's order was not directed to him has no merit. He presided over Superior Court Criminal Nos. 76/2008 and 109/2008, *People v. Ford and People v. Paris.*

When an appellate court, such as the Supreme Court of the Virgin Islands, reverses and remands a case, the appellate court does not issue an order to "the Superior Court of the Virgin Islands" to take further action on the case, nor does it use the name of the trial judge to carry out the order; the appellate court will issue the order for the trial judge that presided over the case to take the action that it ordered. It is clear that Judge Kendall's July 7 opinion, where he refers to both himself and the Superior Court as "the Court," that he had no trouble differentiating between himself and the Superior Court, and that he clearly understood that the Supreme Court ordered him to proceed to trial in a manner consistent with the Court's May 13 opinion. *See People v. Ford*, 5[2] V.I. 30, 34 (V.I. Super. [Ct.] 2009) ("Based upon the reasons set forth below, the Court will recuse itself [from this matter] and return same to the Clerk of the Court for reassignment."). That Order instructed him to consider a postponement of the trial or a change of venue in order to ensure that the Defendants received a fair trial.

(J.A. 1433.) Again, the People state in its brief that they agree with this portion of the December 22, 2010 Recommendation, while Kendall, in a footnote to his brief, objects to this conclusion on the grounds that the order itself did not mandate that Kendall consider a postponement or a change of venue.

 We accept this portion of the Special Master's recommendation. "To prove indirect criminal contempt, evidence must be sufficient to establish[] the court's order was definite, clear, specific, and leaving no doubt in the person to whom it was addressed of the conduct prohibited." *Commonwealth v. McMullen*, 599 Pa. 435, 961 A.2d 842, 849 (2008). It is well established that "[a] trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. 'Where the reviewing court in its mandate prescribes that the court shall proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length.' " *Blasband v. Rales*, 979 F.2d 324, 327 (3d Cir. 1992) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)). Thus, while the May 13, 2009 Order did not itself direct Kendall to consider a postponement or a change of venue, it did remand the matter for proceedings consistent with the May

912

13, 2009 Opinion, (J.A. 22), which had expressly stated that United States Supreme Court and Third Circuit precedent precluded Kendall from concluding, before jury selection even began, that Ford and Paris could not obtain a fair trial due to pre-trial publicity without first considering a change of venue or a postponement. *In re People*, 51 V.I. at 391-92. Moreover, as the Special Master noted, Kendall, in his July 7, 2009 Opinion, wrote that this Court required him to "consider[] other curative measures such as [a] change of venue" or "continu[ing] the matter until the threat abates," but nevertheless held that he would not consider these options because "the Supreme Court should have deferred to [his] findings" and that "continuing this matter . . . would surely be contrary to the well-settled law in the United States." 52 V.I. at 58-59. Similarly, at a June 4, 2009 change of plea hearing in the *Ford* matter, Kendall, immediately after rejecting the parties' plea agreement, expressly stated that this Court had ordered the matter to proceed to trial. (J.A. 108.) In addition, the *In re People* case was not an appeal from a Superior Court decision, but an original proceeding for a petition for writ of mandamus, in which Kendall himself was the nominal respondent, entered an appearance through counsel, and had the opportunity to file an answer and otherwise participate in the proceedings in this Court. *See* V.I.S.CT.R. 13(b). Under these circumstances, there is no doubt that Kendall was aware of what was required by this Court's May 13, 2009 Opinion and Order.

Nevertheless, the Special Master recommends that this Court acquit Kendall on the grounds that the People had failed to prove, beyond a reasonable doubt, that Kendall recused himself from the *Ford* matter for the improper purpose of avoiding compliance with the May 13, 2009 Opinion and Order. Rather, the Special Master found that the evidence is equally consistent with the premise that Kendall recused himself because he believed Bethel had engaged in prosecutorial misconduct and "could not, and ethically should not, render decisions in the case, including decisions on curative measures," (J.A. 1434), and that the People failed to prove beyond a reasonable doubt that this reason for recusal was a pretext.

■■ ■■ Before considering this portion of the Special Master's recommendation, we note that the pertinent part of the August 13, 2009 Order had charged Kendall with failing to comply with the May 13, 2009 Opinion and Order by

a. refusing to schedule the matter for trial and proceeding to trial in the absence of a valid plea disposition;

b. refusing to consider a change of venue or a continuance to minimize pre-trial publicity in the underlying matter; and

c. recusing himself from the matter below for the purposes of avoiding future compliance with this Court's mandate, leading to additional scheduling delays.

(J.A. 1572.) But while the August 13, 2009 Order uses conjunctive language, it is well established that a crime "may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." *United States v. Gunter*, 546 F.2d 861, 868-69 (10th Cir. 1976). *See also United States v. Moreno-Florean*, 542 F.3d 445, 451 (5th Cir. 2008) ("[I]f the indictment alleges elements in the conjunctive, the defendant can be convicted if the evidence establishes any set of disjunctive elements that together constitute the criminal offense.") (citations omitted). As explained earlier, any willful disobedience of a lawful order, if proven beyond a reasonable doubt, is sufficient to establish the crime of criminal contempt. *See Providence Journal Co.*, 485 U.S. at 701-02. Thus, even if the Special Master is correct that the People failed to prove that Kendall recused himself for the purpose of avoiding compliance with this Court's mandate, his finding that the People met its burden by proving, beyond a reasonable doubt, that Kendall had refused to proceed to trial, refused to consider a change of venue, and refused to consider a continuance, warrants finding Kendall guilty of indirect criminal contempt with respect to failing to comply with the May 13, 2009 Opinion and Order. In other words, it appears that the Special Master recommended Kendall's acquittal based on a mistaken belief that the People were required to prove all of the conduct identified in the August 13, 2009 Order as 2(a), 2(b), and 2(c), when the People were only required to meet one of these charges in order to obtain a conviction.

 Nevertheless, we disagree that the evidence that Kendall recused himself for an improper purpose is equally consistent with Kendall's claim that he recused himself for a proper purpose. Although the Special Master heavily relies on the fact that Kendall's July 7, 2009 Opinion accused Bethel of prosecutorial misconduct, and that the Virgin Islands Code provides that "[n]o judge or justice shall sit or act as such in any action or proceeding . . . [w]hen it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot

be had before him," 4 V.I.C. § 284, the December 22, 2010 Recommendation does not acknowledge that, at the June 4, 2009 hearing, Kendall stated that he would issue a written opinion explaining why the plea agreement presented to him at that hearing was being rejected, (J.A. 108), and that the July 7, 2009 Opinion contains a lengthy discussion explaining that Kendall orally rejected the plea agreement because he believed there was no factual basis to support either defendant pleading to voluntary manslaughter. *Ford*, 52 V.I. at 42-46. Significantly, the Special Master agreed with Kendall that he had become aware of the purported prosecutorial misconduct on March 9, 2009, but had not been able to recuse himself at the time due to a stay this Court had put in place during the *In re People* proceedings. (J.A. 1435.) Yet Kendall not only presided over the June 4, 2009 hearing, but reached oral and written decisions on the merits with respect to whether the voluntary manslaughter plea should be accepted, including issuing the written decision in the July 7, 2009 Opinion itself. Moreover, the transcript of the June 4, 2009 hearing reflects that Kendall expressed no hesitancy in conducting the change of plea hearing and stated that, if the plea was accepted, he would preside over sentencing. (J.A. 80.) In addition, the Special Master expressly found that, at the June 4, 2009 hearing, Kendall "did not express any concerns" about misrepresentations or prosecutorial misconduct by Bethel, claim that he was unable to be impartial due to his feelings about Bethel, or mention "any concern about any matters of conscience." (J.A. 1424.) Significantly, the July 7, 2009 Opinion also contains a lengthy discussion — located in the section *following* Kendall's discussion of recusal — explaining why Kendall had *sua sponte* concluded that Ford and Paris could not obtain a fair trial due to pre-trial publicity, despite the holding of this Court's May 13, 2009 Opinion. *Ford*, 52 V.I. at 53-59. Thus, the July 7, 2009 Opinion itself provides strong evidence that Kendall's stated reason for recusal was a pretext, in that Kendall continued to issue rulings in the matter — including in the same document in which he announced his recusal — despite claiming to have been biased against one of the parties. Under these circumstances, we find Kendall guilty of indirect criminal contempt through failure to comply with the May 13, 2009 Opinion and Order. *See Palmer*, 418 N.E.2d at 532 (holding trial judge in indirect criminal contempt for recusing himself to avoid applying decision he disagreed with).

915

## D. Misbehaving in Official Transactions

Finally, the August 13, 2009 Order charged Kendall with misbehaving in his official transactions as an officer of the court by

> a. failing to comply with this Court's May 13, 2009 opinion and order in violation of Rule 1.1 of the American Bar Association's Model Rules of Judicial Conduct, made applicable to Judge Kendall pursuant to Supreme Court Rule 205 and Virgin Islands Bar Association By-law X.8(D);
>
> b. calling into question, through his July 7, 2009 opinion, the integrity of the Virgin Islands judiciary through inflammatory language directed at this Court and concluding that this Court's May 13, 2009 opinion and order was "clearly improper," that its conclusions "make[] no sense" and are "erroneous," and that this Court's mandate should be given "no credence," in violation of Rule 1.2 of the American Bar Association's Model Rules of Judicial Conduct, made applicable to Judge Kendall pursuant to Supreme Court Rule 205 and Virgin Islands Bar Association Bylaw X.8(D);
>
> c. refusing to hear a matter properly assigned to him by recusing himself for reasons not authorized by law, in violation of Rule 2.11 of the American Bar Association's Model Rules of Judicial Conduct, made applicable to Judge Kendall pursuant to Supreme Court Rule 205 and Virgin Islands Bar Association Bylaw X.8(D).

(J.A. 1573.) The Special Master, however, did not perform any independent analysis of these charges, but recommended that this Court acquit Kendall of 3(b) for the same reasons recommended with respect to the obstruction of the administration of justice charges, and that Kendall be acquitted of 3(a) and 3(c) for the same reasons recommended with respect to the failure to comply with the May 13, 2009 Opinion and Order charges. (J.A. 1438.) Moreover, the parties devote little argument to these charges in their briefs, but instead contend that this Court's disposition of the obstruction of the administration of justice and failure to comply charges will also resolve this charge.

■■■■■■■ As this Court explained in the August 13, 2009 Order,

> [T]his Court's inherent powers grant this Court the authority to punish officers of the court who engage in misbehavior in their official trans-

actions. *See In re Petition of Judicial Conduct Committee*, 151 N.H. 123, 855 A.2d 535, 538 (N.H. 2004); *see also Kendall v. Russell*, 572 F.3d 126, 52 V.I. 1021 (3d Cir. 2009). Judge Kendall, as both a Superior Court judge and a member of the Virgin Islands bar, has an obligation, pursuant to Supreme Court Rule 205 and Virgin Islands Bar Association Bylaw X.8(D), to comply with the provisions of both the American Bar Association's Code of Judicial Conduct and Model Rules of Professional Responsibility. Rule 1.1 of the Code of Judicial Conduct requires that a judge comply with the law, while Rule 1.2, titled "Promoting Confidence in the Judiciary," requires that "[a] judge . . . act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary. . . ." Furthermore, Rule 2.7, titled "Responsibility to Decide," mandates that "[a] judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law." Moreover, Judge Kendall, in his role as a Superior Court judge, possesses the ministerial duty not only to comply with this Court's mandate, but to follow all the decisions of this Court — established as the territory's "court of last resort" pursuant to both section 21(b) of the Revised Organic Act and title four, section 2 of the Virgin Islands [Code] — as binding precedent regardless of his personal views of their correctness. *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994).

(J.A. 1569-71.) In other words, the conduct charged as 3(a), 3(b), and 3(c) differs from that charged as 1(a), 1(b), 2(a), 2(b), and 2(c), in that this Court's authority to hold Kendall in contempt stems not from his status as a party to the *In re People* proceedings in this Court, but from his position as an officer of this Court by virtue of his positions, at the time of the charged conduct, as a Superior Court judge and an attorney. However, because neither the December 22, 2010 Recommendation nor the parties' briefs have disputed or otherwise commented on the basis of this Court's authority to hold Kendall in contempt, but have only addressed the substantive charges, we agree with the parties and the Special Master that this Court's disposition of the obstruction of the administration of justice and failure to comply charges also dictates the disposition of the misbehaving in official transactions charge. Therefore, this Court accepts in part and rejects in part the Special Master's Recommendations, and finds Kendall guilty of indirect criminal

contempt for misbehaving in his official transactions as a Superior Court judge.

## III. CONCLUSION

Based on the foregoing, we find that the People proved, beyond a reasonable doubt, that Kendall is guilty of indirect criminal contempt by obstructing the administration of justice, failing to comply with the May 13, 2009 Opinion and Order, and misbehaving in his official transactions. Accordingly, we accept in part and reject in part the Special Master's December 22, 2010 Recommendation, and shall set this matter for a sentencing hearing.