Harry Fred PALMER, III, Appellant,

v.

STATE of Indiana, Appellee.

No. 880S353.

Supreme Court of Indiana.

March 31, 1981.

Richard E. Steinbronn, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, for William J. Nye, Myers & Nye, Elkhart, for respondents.

PIVARNIK, Justice.

This proceeding arises out of an order issued by this Court on January 30, 1981, to the Honorable William D. Bontrager, Judge of the Elkhart Superior Court Number Two, and the Honorable Richard H. Sproull, Special Judge of that court, directing them to appear before this Court and show cause why they should not be held in indirect criminal contempt for failure to carry out an order of this Court. The order in question directed the trial court to sentence Harry Fred Palmer III as required by statute. We issued the show cause order concurrent with findings which were published in an opinion handed down January 30, 1981. *Palmer v. State*, (1981) Ind., 415 N.E.2d 707. This opinion is issued pursuant to our written order of March 6, 1981, finding Judge Bontrager guilty and Special Judge Sproull not guilty of indirect criminal contempt.

All of the facts on which we based our appraisal of apparent contempt were contained within the records filed with this Court. Defendant Palmer entered a plea of guilty to a charge of first degree burglary, under Ind.Code § 35–13–4–4 (Burns 1975), in Judge Bontrager's court. Under Ind. Code § 35–7–1–1 (Burns 1975), first degree burglary was one of several enumerated crimes for which the sentencing court was prohibited from suspending the sentence and placing the defendant on probation. On February 13, 1978, Judge Bontrager sentenced Palmer to not less than ten nor more than twenty years on his plea of guilty, as the burglary statute provided. Judge Bontrager then found § 35–7–1–1 to

be unconstitutional, and thereafter ordered Palmer to serve a sentence of one year, the balance of the sentence to be suspended and Palmer to be placed on probation for a period of five years. The State then prosecuted an appeal.

We decided the original appeal in this case on March 22, 1979. *State v. Palmer*, (1979) Ind., 386 N.E.2d 946. We held that the applicable statutes were constitutional, and that the trial court was therefore limited to sentencing Palmer—by virtue of his guilty plea—to not less than ten nor more than twenty years; we further held that Judge Bontrager had no authority to suspend Palmer's sentence in any fashion. We then remanded the cause to the trial court with directions to modify its judgment accordingly.

This case then came back to us a second time, on Palmer's attempt to present alleged additional issues. We disposed of that appeal by dismissal in our January 30, 1981, opinion. The record showed that, after Palmer's petition for rehearing was denied by this Court following our *first* opinion, a copy of that opinion was certified to Judge Bontrager's court on June 8, 1979. At this point, Judge Bontrager set the matter for "further proceedings." On June 18, 1979, over the State's objection, Judge Bontrager continued sentencing to August 20, and further directed the parties to make omnibus-type disclosure by August 6 of all witnesses and evidence to be introduced at the "further proceedings." Several motions were filed, relating to the scope of discovery, a change in defendant's counsel, and a request for a delay in sentencing pending an appeal to the United States Supreme Court. Palmer also requested a delay in sentencing pending resolution of a case then under consideration by the Supreme Court. Judge Bontrager deferred all rulings. Finally, on August 6, 1979, Judge Bontrager recused himself from the cause without ever having sentenced Palmer pursuant to the statutes and the order of this Court.

On August 8, 1979, Richard H. Sproull appeared and qualified as Special Judge.

He conducted a hearing on August 24, 1979, concerning all pending matters. Special Judge Sproull granted the State's motion for a protective order, denied Palmer's motion to delay sentencing, and set the matter for sentencing on September 5, 1979. On September 7, Special Judge Sproull entered written findings. He found the defendant to be rehabilitated and suggested that it would be cruel to return him to prison at that time. In spite of these findings, he acknowledged this Court's order and sentenced Palmer to the Department of Corrections for a term of ten to twenty years, with credit for time already served. Palmer was ordered to report to the diagnostic center on October 1, 1979. Special Judge Sproull then fixed an appeal bond in the amount of five thousand dollars ($5,000.00). Palmer filed a five hundred dollar ($500.00) cash bond, and was released on September 11, 1979.

We held in our *second* opinion that all issues in the cause had already been decided in our original opinion and, therefore, that no appealable issues remained for our consideration. We noted that, after the March 22, 1979 opinion was certified to the trial court, the only thing left for the trial court to do was to follow the directives in that opinion by striking its order suspending Palmer's sentence and placing him on probation, and thereafter order him committed as the statutes provided. The trial judge had no discretion to act in any other way. There was, therefore, no appeal available to Palmer, and no reason for him to be released on an appeal bond. If the defendant felt at that time that he had remedies to pursue relative to the situation in which he then found himself, he could have raised—and still could raise—those issues in any subsequent actions he thought appropriate. However, there was nothing further to be raised or decided on that attempted second direct appeal. *Palmer v. State*, (1981) Ind., 415 N.E.2d 707, 708–09.

Pursuant to our show cause order, Judges Bontrager and Sproull appeared with counsel before us on February 25, 1981. The evidence adduced at that hearing showed

that the facts already in the record were accurately presented in the two appeals we have considered involving this defendant. The facts further showed that both judges understood the orders of this Court and knew that, under those orders, it was mandatory that Palmer be sentenced to a ten-to-twenty-year term and committed to the Department of Corrections.

Judge Bontrager did not deny any of the facts disclosed in the record, but spoke only in mitigation, concerning his claimed lack of intent to be contemptuous of this Court. He testified of his concern for Palmer's position of being sentenced to a full term after having complied, to that point, with the terms of Judge Bontrager's original sentence, even though this first sentence was found to be illegal. He said he had examined opinions from other jurisdictions that had spoken on this general subject, and was aware that the United States Supreme Court was considering a case in which this general type of due process question was at issue. Further, Judge Bontrager had made public statements concerning Palmer's case and the first opinion handed down by this Court, which were much discussed in the Elkhart County media and among the citizens of the community.

■ Nearly two months after this Court's first opinion was certified to Judge Bontrager's court, the prosecuting attorney, Michael Cosentino, called on Judge Bontrager in his chambers and suggested that he recuse himself from the case, due to his emotional and personal involvement in the affairs of this defendant. Judge Bontrager recognized the validity of Cosentino's assertions; he also recognized that his attitudes were generally known and highly publicized in the community. For those reasons, he recused himself and provided for the selection of a special judge to continue the cause. Thus, Judge Bontrager had the orders of this Court before him for a period of almost two months, orders which he fully understood and yet totally failed to execute.

In a similar contempt proceeding, we had occasion to speak on the conduct of a trial judge who unduly delayed responding to the orders of this Court, where that delay was obviously caused by the trial judge's reluctance to follow those orders. In *State ex rel. Sedam v. Ripley Circuit Court*, (1973) 262 Ind. 25, 27, 302 N.E.2d 761, 762, we stated:

"It appears to this Court that this unseemly delay in executing the orders of this Court was an intentional attempt to thwart the effectiveness of the order which resulted in stirring up additional litigation in Respondent's court as well as in this Court. All of this matter could have been disposed of on August 31, 1973, when Respondent partially executed the orders of this Court. We have concluded from the evidence before us that there has been an attempt to trifle with the Court and to circumvent a compliance with the orders of this Court, thus unnecessarily requiring our time and attention and that of other public officials."

After Judge Bontrager's unseemly delay of almost two months, he placed himself in a position where he could not execute our order, and recused himself from the case without ever having done so.

At the February 25 hearing, we found Judge Bontrager guilty of indirect criminal contempt for failing to carry out the mandate of this Court. We sentenced him to thirty days imprisonment at the State Farm and fined him in the sum of five hundred dollars ($500.00). The prison term was suspended, and the fine was ordered paid on or before March 5, 1981. We further ordered that the matter of Judge Bontrager's conduct would be referred to the Judicial Qualifications Commission for investigation.

■ The evidence at the February 25 hearing showed that Special Judge Sproull indicated to the parties from the beginning of his involvement in the case that, in his opinion, the only option he had was to follow the mandate of this Court, which would require him to sentence Palmer to a ten-to-twenty-year term and commit him to the Department of Corrections. Special Judge Sproull felt, however, that Palmer did have a right to make a record and raise the due process issues he felt were available to him;

Sproull then permitted him to do so, to facilitate presentation of those issues to this Court for review. Special Judge Sproull stated that he did feel that Palmer had a right to raise these issues on an appeal to this Court. It was apparent that the deputy prosecutor handling the case agreed that Palmer did have appealable issues to present. Thus, all concerned agreed that Palmer should be permitted to make a record of those issues and thereafter should be permitted to perfect an appeal to this Court. The deputy prosecutor also agreed to the fixing of an appeal bond pending the purported appeal. As noted earlier, we subsequently dismissed that appeal.

Even though we feel Special Judge Sproull was incorrect in his analysis of the questions in this case and improperly allowed Palmer to be free on bond after his commitment, we have a reasonable doubt whether his actions and intentions amounted to indirect criminal contempt of this Court. Special Judge Sproull came into this cause at a very late date, and was faced with a situation which any special judge would find difficult. He followed a course of action which he sincerely believed was in compliance with this Court's order. His actions in permitting Palmer to make a record and post an appeal bond were encouraged by all of the parties, or at least were not objected to. We therefore found that Special Judge Sproull was not guilty of indirect criminal contempt of this Court.

GIVAN, C. J., and DeBRULER, J., concur.

HUNTER, J., dissents in part and concurs in part in separate opinion in which PRENTICE, J., concurs.

HUNTER, Justice, dissenting in part, concurring in part.

I dissent from the majority's opinion finding that Judge Bontrager is guilty of indirect criminal contempt, but I concur in the necessity of the referral of this matter of Judge Bontrager's conduct to the Judicial Qualifications Commission by reason of his reluctance to follow the law and this

Court's order. He subscribed to the same oath which each member of the judiciary subscribes to when he takes office—that is, to uphold the Constitution of the United States of America and the Constitution and laws of the State of Indiana to the best of his skill and ability. I believe there is a grave question concerning Judge Bontrager's judicial demeanor.

I also concur in the finding that Special Judge Sproull was not guilty of indirect criminal contempt of this Court.

PRENTICE, J., concurs