# IN RE: THE HONORABLE LEON A. KENDALL

S. Ct. Misc. No. 2009-0025

Supreme Court of the Virgin Islands

February 19, 2010

SAMUEL HALL, JR., ESQ., Hall & Griffith, St. Thomas, USVI, *Attorney for the People of the Virgin Islands.*

U. JESSICA CHUNG, ESQ., Moore, Dodson & Russell, P.C., St. Thomas, USVI, *Attorney for Leon A. Kendall.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## ORDER OF THE COURT

(February 19, 2010)

PER CURIAM. **THIS MATTER** is before the Court pursuant to an October 28, 2009 motion for recusal filed by Leon A. Kendall (hereafter "Kendall") as well as a November 23, 2009 opposition filed by the People of the Virgin Islands (hereafter "the People.").[1] This Court, in an August 13, 2009 Order, required Kendall to show cause as to why he should not be held in indirect criminal contempt for (1) obstructing the administration of justice, (2) failing to comply with this Court's May 13, 2009 Opinion and Order in *In re People of the Virgin Islands*, 51 V.I. 374 (V.I. 2009), and (3) misbehaving in his official transactions as an officer of the court. In his motion for recusal, Kendall argues that all three Justices of this Court should recuse themselves from the instant criminal contempt matter "because the conduct charged involves alleged disrespect to or criticism of the Justices" and "[w]hen the alleged contempt involves failure to comply with a judge's order, the judge should recuse him or herself from the contempt proceedings." (Mot. at 2-3.) For the reasons that follow, we deny Kendall's motion.

## I. LEGAL STANDARD

As a threshold matter, this Court notes that the parties disagree as to the applicable law that governs recusal in the instant proceeding. In his

---

[1] On December 1, 2009, Kendall filed a motion "request[ing] leave to file a brief reply to the People's Opposition to [his] Motion to Dismiss and Motion for Recusal on or before December 11, 2009," which this Court granted in a December 2, 2009 order. However, although Kendall submitted a reply to the People's opposition to his motion to dismiss on December 11, 2009, Kendall has failed to file a response to the People's opposition to his motion for recusal.

motion, Kendall contends that the standard set forth in Rule 42 of the Federal Rules of Criminal Procedure[2] and Superior Court Rule 139[3] applies to this matter. However, in its opposition, the People argue that these rules are not applicable and that recusal of judges in the territory is governed only by title 4, section 284 of the Virgin Islands Code.[4]

 We agree with the People that the grounds for recusal established in section 284 apply to this criminal contempt matter. While Kendall argues that this Court should apply the Superior Court and federal rules because "the Virgin Islands Supreme Court has not yet promulgated rules for criminal contempt proceedings,"[5] (Mot. at 2), this Court, upon its establishment, adopted judicial recusal rules that apply to all matters before this Court. This Court's rule concerning the circumstances that warrant recusal — which is mirrored after the disqualification provisions of the American Bar Association's Model Code of Judicial Conduct and incorporates the provisions of section 284 — reads, in pertinent part:

> A justice shall recuse himself or herself in the following circumstances and pursuant to 4 V.I.C. § 284:
>
>> (a) Where a justice has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

---

[2] Federal Rule of Criminal Procedure 42 provides, in pertinent part, that "[i]f the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents." FED. R. CRIM. P. 42(a)(3).

[3] Superior Court Rule 139 requires, in pertinent part, that "if the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the consent of the person charged with contempt." SUPER. CT. R. 139(d).

[4] Title 4, section 284 reads, in pertinent part:

> No judge shall sit or act as such in any action or proceeding:
>
> . . . .
>
>> (4) When it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him.

4 V.I.C. § 284(4).

[5] Although Kendall's October 28, 2009 motion claims that this Court has not promulgated rules governing criminal contempt proceedings, this Court, in its September 16, 2009 order, expressly adopted multiple procedural rules to govern the instant matter, including appointment of a special prosecutor and rules governing pre-hearing disclosures, discovery, and the admission of evidence.

V.I.S.CT. I.O.P. 10.2.1(a). *See also* 4 V.I.C. § 28 ("[T]he Supreme Court may adopt the relevant and applicable provisions of the American Bar Association Model Code of Judicial Conduct to govern the conduct of justices."). Consequently, section 284, as adopted through Supreme Court Internal Operating Procedure 10.2.1, unquestionably applies to this criminal contempt matter.

■ This Court notes that Kendall has failed to explain what authority would require this court to supplement V.I.S.CT. I.O.P. 10.2.1 with Superior Court Rule 139 or Federal Rule of Criminal Procedure 42. With respect to Superior Court Rule 139, it is well established that it is this Court, and not the Superior Court, which may promulgate rules governing this Court's proceedings. *See* 4 V.I.C. § 34(a) ("The Supreme Court may . . . promulgate or amend general rules . . . and regulate the practice and procedure governing causes and proceedings in the Court . . . ."). Likewise, although Superior Court Rule 7[6] may allow some federal rules to apply to Superior Court proceedings, Rule 7, like other rules adopted only by the Superior Court, cannot bind this Court. Accordingly, it does not appear that any procedural mechanism exists which would require this Court to apply either rule to this proceeding.

■ But while neither legislation nor this Court's rules require this Court to apply Federal Rule of Criminal Procedure 42, this Court must consider whether the disqualification procedures in Rule 42 represent a non-constitutional source of law or constitute the minimum constitutional requirements necessary to safeguard a defendant's due process rights under the United States Constitution.[7] *Compare Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 674, 107 L. Ed. 2d 708 (1990) (explaining that, because Federal Rules of Evidence are "nonconstitutional sources," admission of evidence that is clearly

---

[6] Superior Court Rule 7 states that "[t]he practice and procedure in the Superior] Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Criminal Procedure."

[7] *See* The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE. ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995) (preceding V.I. Code. Ann. tit. 1) ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have the same force and effect there as in the United States or in any State of the United States . . . the first to ninth amendments inclusive . . . the second sentence of section 1 of the fourteenth amendment . . . .").

inadmissible under the Federal Rules of Evidence does not violate defendant's due process rights unless "the introduction of this type of evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice' ") (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 2048, 52 L. Ed. 2d 752 (1977)) *with Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (holding that state courts, while not bound by FED. R. CRIM. P. 11, must nevertheless ensure that defendant's guilty plea is voluntary to satisfy minimum constitutional requirements). As indicated in the 1944 Advisory Committee Notes, Rule 42(a) "is substantially a restatement of existing law," with "[t]he provision in the sixth sentence disqualifying the judge affected by the contempt if the charge involves disrespect to or criticism of him, is based, in part, on . . . the observations of Chief Justice Taft in *Cooke v. United States*, 267 U.S. 517, 539, 45 S. Ct. 390, 69 L. Ed. 767." FED. R. CRIM. P. 42 advisory committee's note (1944). In *Cooke*, the United States Supreme Court held that, "where conditions do not make it impracticable, or where the delay may not injure public or private right," a judge must recuse himself from presiding over a criminal contempt matter "where the contempt charged has in it the element of personal criticism or attack upon the judge" because a judge's failure to recuse under such circumstances may prevent "an impartial and calm judicial consideration and conclusion" of the contempt matter. *Cooke*, 267 U.S. at 539. Although the *Cooke* court did not indicate whether it established this rule pursuant to its inherent supervisory power over the federal judiciary or because it was constitutionally required, the Supreme Court subsequently held that the recusal procedure established in *Cooke* is mandated by the Fourteenth Amendment's due process clause and thus applies to state courts. *See Mayberry v. Pennsylvania*, 400 U.S. 455, 464-65, 91 S. Ct. 499, 504-05, 27 L. Ed. 2d 532 (1971). Consequently, this Court finds that the rule established in *Cooke*, *Mayberry*, and their progeny, may serve as an independent basis for recusal in this matter.

## II. DISCUSSION

In his motion, Kendall states that recusal is warranted because, as in *Cooke*, "the conduct charged involves alleged disrespect or criticism of the Justices." (Mot. at 2.) However, in its opposition, the People argue that it "is apparent from even a cursory reading of the [August 13, 2009 Order]" that "the concerns of th[is] Court are professional and

institutional, not personal, defensive, retaliatory or impulsive," and that "[t]here is no evidence presented by [Kendall] that any of the justices felt or feel personally attacked, criticized, or disrespected by [Kendall]." (Opp. at 3.) Rather, the People contend that "[this Court's] concerns are the proper concerns of the highest appellate court in protecting its jurisdiction by enforcing its orders and regulating the conduct of the lower court and Bar . . . ." (*Id.* at 4.)

We agree with the People that the conduct alleged in this Court's August 13, 2009 Order does not constitute the disrespect or criticism that requires that this entire Court recuse itself. As the United States Supreme Court noted in *Cooke*, recusal is mandatory only "where the contempt charged has in it the element of *personal* criticism or attack upon the judge. . . ." *Cooke*, 267 U.S. at 539 (emphasis added). In its subsequent precedents, the Supreme Court expressly declined to expand *Cooke* to require recusal when the charged contempt alleges disobedience of a judge's order or obstruction of the administration of justice without any evidence that the presiding judge had been slandered or attacked in his personal — as opposed to institutional — capacity:

> It is true that Ungar objected strongly to the orders of the court and to its conduct of the trial during his examination. His final outburst, the subject of the contempt, was a flat refusal to answer, when directed by the court, together with an intemperate and strongly worded comment on the propriety of the court's ruling. But we are unwilling to bottom a constitutional rule of disqualification solely upon such disobedience to court orders and criticism of its rulings during the course of a trial. *See Nilva v. United States*, 352 U.S. 385, 77 S. Ct. 431, 1 L. Ed. 2d 415. *We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions.* Apparently because Ungar was being required to answer the questions asked rather than some others which he would rather have answered and because he was directed to cease volunteering testimony, Ungar claimed he was being 'badgered' and 'coerced' and that the court was 'suppressing the evidence.' This was disruptive, recalcitrant and disagreeable commentary, but hardly an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification.

465

. . . .

> Unlike *Cooke v. United States*, 267 U.S. 517, 45 S. Ct. 390, 69 L. Ed. 767, and *Offutt v. United States*, 348 U.S. 11, 75 S. Ct. 11, 99 L. Ed. 11, which were contempt cases from lower federal courts in which the Court found personal bias sufficient to disqualify the judge from convicting for contempt, this record does not leave us with an abiding impression that the trial judge permitted himself to become personally embroiled with petitioner. *Whatever disagreement there was between petitioner and the judge stemmed from the petitioner's resistance to the authority of the judge and its exercise during the trial.* Petitioner was strongly admonished that his conduct was disruptive and disorderly and that he would be held to the natural consequences of his acts. But requiring petitioner to answer the questions put to him and to cease caviling with the prosecutor was fully in accord with the judicial obligation to maintain the orderly administration of justice and to protect the rights of the defendant on trial. *Neither in the courtroom nor in the privacy of chambers did the judge become embroiled in intemperate wrangling with petitioner. The judge dealt firmly with Ungar, but without animosity, and petitioner's final intemperate outburst provoked no emotional reflex in the judge. See Fisher v. Pace*, 336 U.S. 155, 69 S. Ct. 425, 93 L. Ed. 569.

*Ungar v. Sarafite*, 376 U.S. 575, 584-88, 84 S. Ct. 841, 846-49, 11 L. Ed. 2d 921 (1964) (emphases added and footnotes omitted). *See also Mayberry*, 400 U.S. at 465-66 (explaining that "highly personal aspersions" or "fighting words" are necessary to require recusal under *Cooke*, for "[i]nsults of that kind are apt to strike 'at the most vulnerable and human qualities of a judge's temperament.'") (quoting *Bloom v. Illinois*, 391 U.S. 194, 202, 88 S. Ct. 1477, 1482, 20 L. Ed. 2d 522 (1968)). Likewise, multiple federal appellate courts have noted the distinction between a charged contempt that stems from personal disrespect towards a judge and one that merely alleges disobedience of a court order. *See, e.g., In re Puerto Rico Newspaper Guild Local 225*, 476 F.2d 856, 859 (1st Cir. 1973) ("Rule 42(b) . . . disqualifies a judge from presiding over a contempt hearing where 'the contempt charged involves disrespect to or criticism of [that] judge,' but disobedience of a court order has been held not to fall within this category.") (citing *Nilva v. United States*, 352 U.S. 385, 395-96, 77 S. Ct. 431, 1 L. Ed. 2d 415 (1957)); *United States v. Conole*, 365 F.2d 306, 308 (3d Cir. 1966) ("The appellants

contend that since the trial judge initiated the proceedings he was disqualified to summarily hear the matter on the merits. This argument is not supported by any of the cases cited in their brief. Such disqualification is not required unless 'the contempt charged involves disrespect to or criticism of (the) judge.' ") (quoting FED. R. CRIM. P. 42(b)).[8] Significantly, the United States Supreme Court has explained that issuance of a show cause order noting — based on the judge's own observations — that a party's conduct may constitute criminal contempt also does not require judicial recusal:

> The characterization of the petitioner's conduct as contemptuous, disorderly, and malingering was at most a declaration of a charge against the petitioner, based on the judge's observations, which, without more, was not a constitutionally disqualifying prejudgment of guilt, just as issuance of a show-cause order in any criminal contempt case, based on information brought to the attention of a judge, is not such a prejudgment of guilt. Moreover, Judge Sarafite, although believing that Ungar's conduct was disruptive of the trial, did not purport to proceed summarily during or at the conclusion of the trial, but gave notice and afforded an opportunity for a hearing which was conducted dispassionately and with a decorum befitting a judicial proceeding. In these circumstances, we cannot say there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the

---

[8] Kendall, in support of his argument that recusal is required, correctly notes that the Appellate Division of the District Court of the Virgin Islands, in *Gov't v. Santiago*, 937 F. Supp. 1157, 1162, 35 V.I. 130 (D.V.I. App. Div. 1996), held that the failure to follow a judge's order outside of his presence "constituted disrespect" to the judge that required recusal under Superior Court Rule 139(d) and FED. R. CRIM. P. 42. Appellate Division decisions, however, are not binding on this Court. *See In re People of the V.I.*, S.Ct. Civ. No. 2009-021, 2009 V.I. Supreme LEXIS 32, at *21 n.9 (V.I. May 13, 2009). In addition, as stated above, the United States Supreme Court has consistently held that disobedience of an order issued by a judge, without more, does not constitute the disrespect necessary to require recusal. *See, e.g., Ungar*, 376 U.S. at 584-88; *Nilva*, 352 U.S. at 395-96. Moreover, the *Santiago* court does not cite to or discuss these contrary Supreme Court rulings in its opinion, nor does it appear that these authorities were brought to its attention. *See United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37-38, 73 S. Ct. 67, 69, 97 L.Ed. 54 (1952) (holding that prior decisions are not binding precedent on points neither raised by counsel nor discussed in the opinion of the court in that case); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions."). Accordingly, because both this Court and the Appellate Division are bound by decisions of the United States Supreme Court, this Court declines to adopt the decision in *Santiago* and shall instead continue to follow the Supreme Court's decisions in *Ungar, Nilva, Mayberry*, and related cases.

balance between vindicating the interests of the court and the interests of the accused.

*Ungar*, 376 U.S. at 588.

■ Here, all three charged acts of indirect criminal contempt stem from Kendall's opinion in *People v. Ford*, 52 V.I. 30 (V.I. Super. Ct. 2009), and Kendall's alleged refusal to comply with this Court's mandate. Other federal and state appellate courts, in original proceedings for indirect criminal contempt stemming from violations of their own orders, have not recused themselves. *See, e.g., In re Winn-Dixie Stores, Inc.*, 386 F.2d 309 (5th Cir. 1967); *Palmer v. State*, 275 Ind. 128, 418 N.E.2d 530 (1981); *In re Reed*, 901 S.W.2d 604 (Tex. App. 1995). Although Kendall correctly notes that this Court's August 13, 2009 Order stated that Kendall's *Ford* opinion held that this Court's May 13, 2009 opinion was "clearly improper," that this Court's mandate "should be given 'no credence,'" and that this Court's writ of mandamus "was apparently . . . issued to facilitate the Prosecution's blatant misconduct and perpetrate a fraud on the [Superior] Court," (Mot. at 3-4), such statements, while perhaps disrespectful of this Court as an institution, do not personally attack, slander, or disrespect any particular Justice[9] as would be required for recusal under *Cooke* and its progeny. Moreover, Kendall has provided no evidence that would indicate that any of the Justices of this Court may harbor any negative personal feelings towards him or that any Justice has become so embroiled in this controversy so that he or she "cannot 'hold the balance nice, clear and true between the State and the accused.'" *Taylor v. Hayes*, 418 U.S. 488, 501, 94 S. Ct. 2697, 2704, 41 L. Ed. 2d 897 (1974) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S. Ct. 437, 444, 71 L. Ed. 749 (1927)). Finally, while Kendall correctly states that "this Court recognized the importance of avoiding even the appearance of impropriety or the public perception of a conflict of interest in these proceedings . . . when it appointed a special prosecutor rather than the Attorney General to prosecute the case," (Mot. at 5), this Court's September 16, 2009 Order expressly stated that this appointment was necessary "given the procedural history of this case," (Order. at 2 n.4), which included Kendall issuing a warrant for a prosecutor's arrest and alleging in his *Ford* opinion that the prosecutor had perpetuated a fraud on

---

[9] Notably, Kendall's Ford opinion does not make reference to any individual Justice.

the Superior Court. While allowing the Attorney General to prosecute the instant criminal contempt matter could have, given the antagonistic relationship between Kendall and members of the Attorney General's office in the *Ford* litigation, created an appearance of impropriety, these circumstances are not present with respect to Justices of this Court.[10] Accordingly, this Court shall deny Kendall's motion.

## III. CONCLUSION

Because none of the charged acts of contempt stem from personal attacks against the Justices of this Court, recusal is not required pursuant to the United States Supreme Court's decisions in *Cooke, Ungar,* and *Mayberry.* Moreover, Kendall has failed to present any evidence demonstrating that any of the Justices have embroiled themselves in a controversy with him or otherwise are unable to preside over this matter fairly and impartially. Accordingly, it is hereby

**ORDERED** that Leon A. Kendall's October 28, 2009 motion for recusal is **DENIED**; and it is further

**ORDERED** that copies of this order be directed to the appropriate parties.

**SO ORDERED** this 19th day of February, 2010.

---

[10] Moreover, this Court notes that its December 18, 2009 Order appointing an independent special master to conduct the hearing in this matter and make non-binding findings and recommendations to this Court further reduces any potential appearance of impropriety.