**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JOHN P. DE JONGH, JR. and JULITO A. FRANCIS, Defendants**

Case Nos. ST-15-CR-309, ST-15-CR-310
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
January 26, 2016

CLAUDE E. WALKER, ESQ., Attorney General of the U.S. Virgin Islands, DANIEL H. HUSTON, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorneys for the People.*

MICHAEL C. QUINN, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI; GORDON C. RHEA, ESQ., Gordon C. Rhea, P.C., Mt. Pleasant, SC, *Attorneys for de Jongh, Defendant.*

ROBERT L. KING, ESQ., King Law Firm, P.C., St. Thomas, USVI, *Attorney for Francis, Defendant.*

DONOHUE, SR., *Judge*

## MEMORANDUM OPINION

(January 26, 2016)

**BEFORE THE COURT** is a motion filed by the People of the Virgin Islands requesting that the undersigned judge recuse himself from presiding over these criminal cases allegedly because of bias and the appearance of impropriety. The People's motion, which is actually a motion to disqualify, raises a question of first impression in this jurisdiction: whether members of the judiciary should be disqualified from presiding over a case involving the governor who appointed (or decided not to reappoint) that judicial officer. For the reasons that follow the People's motion to disqualify must be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

John P. de Jongh, Jr. was elected Governor of the Virgin Islands in 2006 and took office on January 1, 2007. By law Virgin Islands governors are provided, as their official residence, "the Government House on Saint Thomas," or "[w]hile in Saint Croix . . . Government House on Saint Croix." 48 U.S.C. § 1591. Soon after taking office, however, de Jongh opted — like others before him — to reside at his own private residence for the duration of his term as governor rather than move himself (and his entire family) into Government House on St. Thomas. Officials within his administration expressed concern about the security level at de Jongh's private residence, believing "that, as a result of the Governor's decision, security related improvements" had to be made to the residence. The Virgin Islands Department of Public Works requested advice from the Virgin Islands Department of Justice whether "the cost of security related improvements . . . may be properly incurred by the Government." (Letter from Elliott M. Davis, Esq., Acting Att'y Gen, to Robert Moorehead, Acting Comm'r, Dep't of Pub. Works (Jan. 22, 2007), *attached as* Ex. B to Def. de Jongh's Mot. Dismiss (hereinafter "de Jongh Dismiss Mot."), filed Nov. 3, 2015.) Then Acting Attorney General Elliott M. Davis advised the Department of Public Works by letter dated January 22, 2007 that public funds could be expended for improvements to a governor's

private residence because the funds would ultimately be used for "a valid public purpose," "protecting the Governor." *Id.*

Subsequently, by letter dated January 30, 2007, the acting commissioner of the Department of Public Works, Robert Moorehead, requested the "support and approval" of the Governor — but in his capacity as chairman of the board of the Virgin Islands Public Finance Authority, *see* 29 V.I.C. § 919 — "to de-obligate funds in the amount of $1,305,000.00" previously appropriated by Act 6427 for the Nadir Bridge project and instead reallocate those funds to other projects, including construction of a security booth and road improvements on de Jongh's private residence for an estimated cost of $275,000. (Letter from Robert L. Moorehead, Acting Comm'r, Dep't of Pub. Works, to John P. de Jongh, Jr., Chairman, V.I. Pub. Fin. Auth. (Jan. 30, 2007), *attached as* Exhibit C to de Jongh Dismiss Mot.) Acting Commissioner Moorehead explained that "other monies" could later be obligated to the Nadir Bridge project since constructing the bridge would be the last phase of a three-phase project. *Id.* Phase two had not yet begun and phase three was "at a minimum" three years away. *Id.* Acting Commissioner Moorehead then requested that de Jongh forward his request to the 27th Legislature and ask "that Act 6427 be amended." *Id.*

Whether de Jongh gave his approval is unclear on the present record. However, on March 21, 2007, the Legislature of the Virgin Islands passed bill number 27-0039 which, in section 16, amended Act 6427 "by striking '$1,305,000' " and, in section 17, appropriating "the saving realized . . . to the Department of Public Works for engineering designs, construction, repairs or the resurfacing of roads." Act No. 6917, §§ 16, 17, 2007 V.I. Sess. Laws 13, 17. On April 16, 2007, Governor de Jongh approved of all but two portions of the bill, which became law, as Act 6917, once the Legislature's time to override the Governor's veto passed. Next, on April 25, 2007, Darryl A. Smalls, the commissioner-designee for the Department of Public Works, wrote to Julito A. Francis, in his capacity as Director of Finance and Administration for the Virgin Islands Public Finance Authority, to request that Francis "forward a letter" to Lynn Millin, Commissioner of the Virgin Islands Department of Property and Procurement, and "inform her that the funds in the amount of $1,305,000 can be used from the 'Nadir Bridge Flood Control Project' for other projects, including the security improvements to de Jongh's private residence." (Letter from Darryl A. Smalls, Comm'r Designee, V.I. Dep't

of Pub. Works, to Julio [sic] A. Francis, Dir. of Fin. & Admin., V.I. Pub. Fin. Auth. (Apr. 25, 2007), *attached as* Ex. E to de Jongh Dismiss Mot.) Francis sent the letter, dated April 30, 2007, to Commissioner Millin and explained that the funds "reprogrammed" by Act 6917 were "to be used for" security improvements to the de Jongh residence, among other projects, and then further explained what documents must be submitted by the Department of Property & Procurement, the Department of Public Works, and the Public Finance Authority before funds could be disbursed. (Letter from Julito A. Francis, Dir. of Fin. & Admin., V.I. Pub. Fin. Auth., to Lynn Millin, Comm'r, Dep't of Prop. & Procurement (Apr. 25, 2007), *attached as* Ex. F to de Jongh Dismiss Mot.) Thereafter, contracts were awarded and construction begun at the de Jongh residence that, once completed, saw approximately $490,000 expended on the security-related improvements.

By 2009, and continuing into 2010, local newspapers began to turn their attention to the security-related improvements made to the Governor's private residence. This prompted the Legislature, in October 2009, to hold hearings and de Jongh, in February 2010, to announce that at the end of his term in office he would repay "the value of whatever remained permanently affixed to his property." (De Jongh Dismiss Mot. 6 (citation and footnote omitted).) The construction also caught national attention after "[a] Virgin Islands senator and United States enforcement agencies had made a number of allegations that public funds, including federal funds, were improperly used to make the improvements." This caused the Office of the Inspector General within the United States Department of the Interior, between August and November 2009, to investigate and in January 2010 release a report detailing its findings. (Office of Insp. Gen., U.S. Dep't of Interior, VI-IS-VIS-0004-2009, Security Improvements at Governor of the Virgin Islands Private Residence (2010), *attached as* Ex. H to de Jongh Dismiss Mot.)

Also in 2009, Lawrence Olive, a resident of St. Thomas, filed a complaint *pro se* with the Civil Division of the Superior Court of the Virgin Islands and named de Jongh and Francis as defendants as well as Elliott M. Davis, Vincent F. Frazer, Lynn Millin-Maduro, and Darryl A. Smalls, all in their individual capacities for acts taken while in office concerning the security-related improvements to de Jongh's private residence. The case, captioned *Olive v. de Jongh* and docketed as case number ST-09-CV-426, was assigned by the Clerk's Office to a judge in

the St. Thomas/St. John District for further proceedings.[1] But after each judge in the St. Thomas/St. John District, including the judge assigned to the Family Division, recused *sua sponte*, the Clerk by letter dated December 30, 2009 transferred the case to the St. Croix District for reassignment to a judge on St. Croix. Although the Clerk's Office initially assigned the case at random to the Honorable Harold W.L. Willocks, who presided over the matter briefly, he too recused *sua sponte*. The case was then reassigned, on June 2, 2010, to the undersigned judge.

Subsequently, Smalls, on March 2, 2010, and de Jongh, on March 26, 2010, each filed motions to dismiss the complaint for failure to state a claim. Francis, by notice filed March 19, 2010, joined Smalls's motion to dismiss and Millin-Maduro, by motion filed May 14, 2010 and granted by Order entered May 18, 2010, joined both motions to dismiss. Once the motions were fully briefed, the Court, by memorandum opinion and order entered August 3, 2012, found Olive's complaint failed to state any claim upon which relief could be given. The Court granted both motions and dismissed the complaint with prejudice as to all defendants. *See generally Olive v. de Jongh*, 57 V.I. 24 (Super. Ct. 2012). Nothing further occurred in the *Olive* case and Olive did not appeal the dismissal.

This forms the first the basis for the People's motion to disqualify.

De Jongh ran for and was elected to a second term as governor, which commenced in 2011. As provided by section 72 of title 4 of the Virgin Islands Code, the Governor of the Virgin Islands, with the advice and consent of the Legislature, appoints the judges of the Virgin Islands. Judges hold their offices for a term of six years. *See* 4 V.I.C. § 73. Governor Charles W. Turnbull had nominated the undersigned to become a judge in 2000 and, with the approval of the Legislature, the undersigned took office in 2001 as a judge of the Territorial Court of the Virgin Islands, the name of the local trial court before it was redesignated in October 2004 as the Superior Court of the Virgin Islands. *See* Act No. 6687, § 5, 2004 V.I. Sess. L. 179, 189 (Oct. 29, 2004). In December 2006, the undersigned judge assumed the office of Presiding Judge of the Superior Court of the Virgin Islands after the position was vacated by the

---

[1] When the complaint was first filed, on September 21, 2009, the Clerk's Office initially assigned the case at random to the Honorable Leon A. Kendall but (for reasons unclear from the docket) reassigned the matter four days later, on September 25, 2009, to the Honorable Brenda J. Hollar.

Honorable Rhys S. Hodge, who was appointed to the Supreme Court of the Virgin Islands. In April 2007, Governor de Jongh re-nominated the undersigned judge to a second term and, further, to continue serving in office as the Presiding Judge of the Superior Court. Six years later, in October 2013, the undersigned judge assumed senior status and retired from the bench once Governor de Jongh decided not to re-nominate the undersigned judge to a third term.

This forms the second basis for the People's motion to disqualify.

De Jongh concluded his second term in office in January 2015 when Kenneth E. Mapp was sworn in as Governor of the Virgin Islands. Eight months later, on August 17, 2015, the Attorney General of the Virgin Islands, through an assistant attorney general, petitioned the Superior Court for the issuance of a warrant for the arrest of John P. de Jongh, Jr. and Julito A. Francis on charges of embezzlement of public funds, in violation of Section 1662(1) of Title 14 of the Virgin Islands Code, and neglecting to pay over public monies, in violation of Section 1663(1) of Title 14 of the Virgin Islands Code. The Presiding Judge of the Superior Court granted the petition and warrants issued later that day. The Defendants, de Jongh and Francis, appeared before a Superior Court magistrate on August 18, 2015 for advice of rights and were released on personal recognizance with conditions but without bond.

The People filed formal charges against both Defendants on September 2, 2015. The next day, September 3, 2015, the parties appeared before the Magistrate Court for arraignment. Each Defendant entered a plea of not guilty and asserted their rights to a speedy trial by jury. The court advised the parties that their cases had been assigned to the Honorable Kathleen Y. Mackay for further proceedings and by written order entered the same day set pretrial hearing dates as well as a date for jury selection and trial to begin six months later on March 14, 2016. Approximately two weeks later, on September 15, 2015, Judge Mackay citing Rule 2.11(c) of the Model Code of Judicial Conduct *sua sponte* recused from presiding over both matters "to avoid the appearance of impropriety due to her having been nominated to serve as a Superior Court Judge by Defendant John P. de Jongh, Jr." (Order 1, entered Sept. 15, 2015.)

When more than a week passed and the Clerk's Office had not assigned another judge yet de Jongh, on September 24, 2015, filed a motion directed to the Presiding Judge requesting that he assign a judge. Believing that "each of the nine Judges currently serving on the bench of

the Superior Court have the same issue as Judge Mackay, having either been nominated or re-nominated for their position" by him, de Jongh asserted that the only option was for the Presiding Judge to appoint a retired judge pursuant to Section 74a of Title 4 of the Virgin Islands Code. (Def. de Jongh's Mot. for Judicial Assign. 1, filed Sept. 24, 2015.) Although de Jongh did not address all former judges who might have been available, he did identify two by name in his September 24, 2015 Motion — the Honorable Edgar D. Ross and the undersigned — and then asserted that the undersigned "suffers from the same character of 'appearance of impropriety' identified by Judge Mackay, but from the opposite point of view." *Id.*

> If Judge Mackay and the other members of the bench are concerned with the possibility of appearing biased in favor of Gov. de Jongh because he appointed or reappointed them, surely Judge Donohue will be concerned that he will appear biased against him if he presides over Gov. de Jongh's trial.

*Id.* at 2. Emphasizing that he "should not have his right to a fair and speedy trial compromised for reasons beyond his control," de Jongh then concluded that Judge Ross was the only "viable candidate" not "affected by any of the factors that favor recusal of the other members of the Superior Court bench." *Id.*

Francis did not join or otherwise respond to de Jongh's September 24, 2015 judicial assignment motion. The People did respond in opposition and accused de Jongh of trying to "hand-pick the assigned judge" and circumvent the "established process utilized by the Clerk of Court to select and appoint subsequent judges when a conflict arises or a judge is required to recuse himself or herself." (People's Opp'n to Def. de Jongh's Judicial Assign. Mot. 1, filed Oct. 22, 2015.) In reply, de Jongh reiterated that he was "not 'judge-shopping,' " but wanted to highlight "the obvious in order to avoid what would be a glaring appealable issue:"

> if judges nominated or re-nominated by Gov. de Jongh are recused for the appearance (not the actuality) of bias *for* Gov. de Jongh, Senior Judge Donohue must also be recused for the appearance (again, not actuality) of bias *against* Gov. de Jongh. This is further complicated by the fact that Senior Judge Donohue authored the opinion in *Olive v. de Jongh*, 57 V.I. 24 (Super. Ct. 2012), a civil suit based on the same facts

60

as charged in the Information. Although the *Olive* suit was dismissed, Senior Judge Donohue was not re-nominated, a fact that enhances the appearance (no doubt baseless in reality) of bias against Gov. de Jongh.

This leaves only Senior Judge Ross.

The People's opposition does not comment on any of this, and it remains unrebutted and unrebuttable.

(Def. de Jongh's Reply in Further Supp. of Mot. for Judicial Assign. 2, filed Oct. 26, 2015 (emphasis in original).)

Without directly referencing de Jongh's judicial assignment motion, the Presiding Judge, by order entered November 13, 2015, in effect granted the motion in part and, pursuant to Sections 72b and 74a of Title 4 of the Virgin Islands Code, reassigned de Jongh's case and Francis's case for further proceedings to the undersigned as senior sitting judge of the Superior Court in the St. Croix District. At the time both cases were reassigned at least five substantive motions (including two motions challenging the merits of the charges) were filed by de Jongh that would have to be decided before the March 14, 2016 jury selection and trial date. On November 16, 2015, the Clerk's Office forwarded an electronic copy of both case files to the St. Croix District, after which the undersigned began reviewing the files and ruling on time-sensitive motions each Defendant had filed for leave to travel outside the Territory.

Subsequently, on November 30, 2015, the People filed the motion now before the Court. Citing Section 284 of Title 4 of the Virgin Islands Code and also "Canon 1 of the Virgin Islands Code of Judicial Conduct" the People moved the undersigned to disqualify himself from presiding over both cases. (People's Recuse Mot. 1, filed Nov. 30, 2015.) As grounds for disqualification the People pointed to the fact that the undersigned "was retained as Presiding Judge and nominated to his second term as a V.I. Superior Court judge by then Governor John de Jongh in 2007," but, "was not reappointed to a third term in 2013" by the same governor. *Id.* The People next pointed to the undersigned's decision in the *Olive* case, which "involved a similar factual predicate as the current underlying criminal charges" and was brought against the two Defendants named "in the within criminal matter." *Id.* at 2. Finally, the People noted "the 'appearance of impropriety' " previously "identified by counsel for Defendant de Jongh" in de Jongh's judicial assignment motion, but did

61

not explain why it would appear improper for the undersigned to handle either case. *See id.* (" 'Gov. de Jongh did not reappoint Judge Donohue when his tenure expired . . . . [and his] decision not to reappoint Judge Donohue was made after Judge Donohue issued a ruling favorable to the Governor as well as co-defendant Julito Francis in *Olive v. de Jongh*' " (quoting Def. de Jongh's Judicial Assign. Mot. at 1-2)).

De Jongh filed his response on December 9, 2015[2] and attached copies of the motion papers from his judicial assignment motion. In opposing the People's motion, de Jongh first claimed that it was, "in truth, merely an attempt to delay these proceedings for its own benefit." (Def. de Jongh's Resp. to People's Recuse Mot. 1, filed Dec. 9, 2015.) "With no answer to the several grounds raised . . . as to why this case should be dismissed," the prosecution "appears to be attempting to stave off adverse rulings," de Jongh argued, "by demanding reassignment in the hope either of delaying the March 14, 2016, trial date, or leaving the Court no time to rule before seating a jury." *Id.* De Jongh then proceeded to address and reject the People's claims, but not before highlighting "an issue" raised by the People's motion "that, at first blush, might seem to place" him "in a dilemma." *Id.* at 3.

De Jongh observed that the "present predicament was perhaps brought on by an overly restrictive reading of the recusal statute." *Id.* Disqualification is required under Section 284(4), de Jongh argued, only when "the *facts alleged by the party arguing for disqualification . . . reflect a clear probability that the judge is biased against that party.*" *Id.* (emphasis in original) (quotation marks and citation omitted).

> The bare fact that Gov. de Jongh appointed Judge Mackay does not make it appear probable that she would favor him when issuing ruling in the case. The same is true for every other active Judge of the Superior Court, all of whom seemingly take the same view. This is not to

___

[2] By order entered December 2, 2015, the Court shortened the parties' response time in part because of the number of motions pending and approaching trial date, but, more importantly, because the present motion challenges the authority of the undersigned judge to preside over these cases. *Accord* Richard E. Flamm, *Judicial Disqualification* § 17.1 (2d ed. 2007) ("In order to reduce the risk of waste inherent in having a challenged judge issue orders or take other actions that are potential nullities it is generally agreed that, when a judge is confronted with a motion seeking his disqualification, he should resolve that motion immediately, before making any other rulings in the case" (footnotes omitted)).

say that *sua sponte* recusal was improper. It was not . . . . But neither was it required under Virgin Islands law.

*Id.* at 3-4. At the point when he was "confronted by Judge Mackay's recusal" — and proceeding under the assumption that if "Judge Mackay's logic were to govern" all the other active judges would also recuse themselves — de Jongh moved to have a retired judge assigned because he wanted "to maintain his right to a speedy trial." *Id.* at 4. In that context, de Jongh believed that "the only available judge would be Judge Ross" because Judge Ross was not "appointed or reappointed by" him. *Id.* But once the People opposed his judicial assignment motion, accusing him of "attempt[ing] to 'hand-pick' the assigned judge," *id.* (quoting People's Opp'n 1), de Jongh reiterated in reply "that he did not believe Judge Donohue harbored actual bias against him — he just wanted to get on with the case." *Id.*

It is against this background that de Jongh proffered two reasons why the People's motion should be denied.

> First, to recuse Judge Donohue now would result in a procedural quagmire of indefinite duration. Our active judges apparently will not take the case. Senior Sitting Judge Donohue has accepted it, and for that Gov. de Jongh is grateful. Of course Judge Donohue could not have been forced to do so. *See In re Connor*, 61 V.I. 273, 277 (V.I. 2014) . . . . Second, and more importantly, Plaintiff has not shown any evidence that by reason of bias or prejudice against either Gov. de Jongh or Plaintiff, a fair and impartial trial cannot be had before Judge Donohue. Without it, Plaintiff's motion must fail. *In re Kendall*, 53 V.I. 459, 468 (V.I. 2010) . . . .

*Id.* at 5-6 (internal citations and parenthetical quotations omitted).

The People did not file a reply to de Jongh's opposition. Francis also did not file a response in support of, or in opposition to, the People's disqualification motion. Nothing further has come before the Court on this motion.

## DISCUSSION

"[T]he Due Process Clause of the Fourteenth Amendment establishes a constitutional floor . . . [that] clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S.

899, 904-05, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1977) (quotation marks and citations omitted).

> In the Virgin Islands, section 284 of title 4 establishes the substantive standard for recusal of Superior Court judges, and it provides, in pertinent part, that no judge shall sit or act as such in any action or proceeding when it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him. Section 286 of title 4 controls the procedure by which a complaining party may bring a motion for recusal and requires (1) that the motion be in writing and (2) that the motion be made first before the judge that the party seeks to disqualify.

*Walters v. Walters*, 60 V.I. 768, 782-83 (2014) (quotation marks, citations, alterations and ellipses omitted). Here, the People, as the complaining party, met the procedural requirements for disqualification; they filed a motion in writing before the undersigned judge. But the People have not met the substantive requirements for disqualification.

█ The Supreme Court of the Virgin Islands has not yet held, directly, that the party moving to disqualify has the burden of showing bias or prejudice. This Court finds, however, that both binding and persuasive precedent leads us to this conclusion. *See, e.g., Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 569 (2012) ("before a judge is required to recuse him or herself based on bias, *the facts alleged by the party arguing for disqualification* must 'reflect a clear probability that the judge is biased against that party.' " (emphasis added) (quoting *Gov't of the V.I. v. Gereau*, 502 F.2d 914, 931-32 (3d Cir. 1974))); *see also Walters*, 60 V.I. at 783-84 (quoting *Benjamin*, 56 V.I. at 569). *Accord In re Kendall*, 53 V.I. 459, 468 (2010) (per curiam) ("Kendall has *failed to present any evidence* demonstrating that any of the Justices have embroiled themselves in a controversy with him or otherwise are unable to preside over this matter fairly and impartially" (emphasis added)). That the People, as the moving party, have the burden here is also supported by the substantive law. *See* 4 V.I.C. § 284 ("No judge or justice shall sit or act as such in any action or proceeding . . . [w]*hen it is made to appear probable* that, by reason of bias or prejudice . . . a fair and impartial trial cannot be had before him" (emphasis added)); *id.* § 286 ("*the party objecting to competency* may, in writing, file with the judge his objection, stating the grounds" (emphasis added)). *Accord Walters*, 60 V.I. at 793 (Swan, J., concurring) ("The law

assumes judicial impartiality. Therefore, *a party claiming judicial bias has a heavy burden*" (emphasis added) (internal citation and parenthetical quotation omitted)). *See generally* Richard E. Flamm, *Judicial Disqualification* § 19.5 (2d ed. 2007) ("judicial bias is never presumed. On the contrary, there is a strong presumption that those who sit in a judicial capacity are not only qualified, but disinterested, impartial, and unbiased in all matters that come before them. . . . Consequently, it is not the burden of the challenged judge to justify retaining a case that has been assigned to him. Rather, it is the burden of anyone who would contend that judicial disqualification is warranted to overcome this presumption, by clearly and affirmatively demonstrating actual bias, impropriety, or the ill will of the challenged judge; or by distinctly stating other grounds warranting such relief" (footnotes omitted)). Accordingly, this Court holds that, under section 284(4) of title 4 of the Virgin Islands Code, the party moving for disqualification has the burden of proof.

■ ■ How the moving party carries this burden is also unclear. *See, e.g.,* Flamm, *Judicial Disqualification* § 19.5 ("while the affidavits filed in support . . . do not have to contain every fact . . . a party who seeks to disqualify a judge for cause typically must show — by compelling evidence, substantial evidence, a preponderance of the evidence, or at least some evidence — that the judge possesses a bias against one of the parties that is personal, as opposed to judicial, in nature" (footnotes omitted)). *Compare Benjamin,* 56 V.I. at 569 ("Benjamin has provided us with *no facts* that would permit us to draw any inference that the trial judge was biased" (emphasis added)), and *Kendall,* 53 V.I. at 468 ("Kendall has failed to present *any evidence* . . ." (emphasis added)), *with Gereau,* 502 F.2d at 932 ("The local provision concerning bias, [section 284(4) of title 4,] as noted by the Reviser, was 'suggested by' the federal statute, which requires allegations to be taken as true. Further, were the challenged judge allowed to deny the validity of the charge against him, rather than simply weighing its legal effect, a full evidentiary hearing would be required to review effectively the denial of a disqualification motion. We, therefore, conclude that in applying the standard stated above, the district court must *take the movant's factual allegations as true*" (emphasis added) (internal citation omitted)). Based upon the foregoing, the Court finds that the moving party, in this case the People, must support a motion for disqualification with some evidence. In this instance, however, the Court need not resolve questions as to the level of

proof necessary because the People did not submit anything to support their claim other than the arguments of counsel. *See Henry v. Dennery*, 55 V.I. 986, 994 (2011) ("unsworn representations of an attorney are not evidence"); *Benjamin*, 56 V.I. at 569 ("broad and completely unexplained assertions fall well below the 'clear probability' standard for disqualification"). So, on this basis alone, the Court could deny the People's motion. *Accord Walters*, 60 V.I. at 784 (affirming denial of motion to disqualify because movant "simply made a naked claim" of bias "supported solely by unsubstantiated allegations" and without providing facts). However, because the law is unclear — but also because the People did allege some grounds in their motion even if they did not substantiate those grounds with evidence — the Court will now turn its analysis to the implications raised in the People's motion.

■ As their first claim, the People have implied that the undersigned judge might be biased against the prosecution because the undersigned also presided over the *Olive* case. But "the fact that a judicial officer previously presided over a case involving the same party is not grounds for recusal." *In re Disbarment of Rogers*, 60 V.I. 293, 302 n.1 (2013) (per curiam). *See also Maduro v. P&M Nat'l, Inc.*, 31 V.I. 121, 126 n.8 (D.V.I. App. Div. 1994) ("The mere observation that the trial judge presided over a previous case involving appellant in a small claims matter does not come close to demonstrating bias."); *Murrell v. Weiner*, 8 V.I. 191, 192 (Munic. Ct. 1971) ("the grounds set forth for disqualification (i.e. that this Court previously heard a criminal matter in Traffic Court allegedly arising out of the same circumstances upon which the present civil action is based and there found the defendant, Scott Weiner, Not Guilty) are legally insufficient to support disqualification"). *Accord Boyd v. State*, 321 Md. 69, 581 A.2d 1, 6 (1990) ("Participation in prior legal proceedings involving related parties or issues is simply not grounds for a judge to recuse himself" (citation omitted) (collecting cases holding same)). *See generally* 46 Am. Jur. 2d *Judges* § 154 (2006) (collecting cases) ("In criminal actions, a judge is not disqualified by virtue of a former decision in a civil case, whether related to the instant case or not, against the same defendant."). So, if the People base their disqualification claim on the undersigned's decision in the *Olive* case, this claim — which is true, *see Olive*, 57 V.I. at 30, and should be taken as true, *see Gereau*, 502 F.2d at 932 — does not reflect any probability, let alone a clear probability, of bias against the prosecution on these criminal cases currently before this

66

Court. As noted in *United States v. Berkan*, " '[t]he judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case.' "[3] 502 F. Supp. 25, 28 (D.P.R. 1980) (quoting *United States v. Cowden*, 545 F.2d 257, 266 (1st Cir. 1976), *cert. denied*, 430 U.S. 909, 97 S. Ct. 1181, 51 L. Ed. 2d 585 (1977)). Therefore, the Court rejects the People's first claim as being legally insufficient to disqualify a judge.

As their second claim, the People suggest in their motion that the undersigned was not reappointed to a third term in office by de Jongh and then based on this suggestion conclude that the undersigned would be biased against de Jongh. Again putting aside concerns regarding the lack of evidence — but still taking this factual statement as true, that is, that the undersigned was not reappointed to a third term — the People's second claim must also be rejected as legally insufficient. The People base this claim on the assumption that a judge or justice appointed by the governor would be biased in that governor's favor and disqualified, as a result, from presiding over any case involving her or him. It follows then, the People contend, that the converse also holds: a judge or justice not reappointed by a governor would be biased against that governor and disqualified from presiding over any case in which the same governor is a party. In other words, the People assume, on the one hand, that that a judge or justice owes some allegiance or affinity, or even good will, to the governor who appoints her or him to the bench and, if not reappointed, then that judge or justice would be disloyal or perhaps harbor ill will towards the same governor. In either instance, bias is shown and the judge or justice is disqualified. But both assumptions are flawed.

As an initial point, the Court first notes that recusal and disqualification are not the same. While "in modern practice 'disqualification' and 'recusal' are frequently viewed as synonymous, and employed interchangeably," they are different. Flamm, *Judicial Disqualification* § 1.1

---

[3] A point that is particularly compelling in smaller jurisdictions like the Virgin Islands where only nine Superior Court judges hold active office presently (including both judges assigned to the Family Division). *But cf.* Flamm, *Judicial Disqualification* § 20.2 (an "ancient edict" of the common-law, "[t]he Rule of Necessity operates on the principle that where disqualification would result in an absence of judicial machinery capable of dealing with a matter, and thereby negate the only tribunal with power to act in the premises, disqualification must yield to necessity" (footnotes omitted)).

(footnotes omitted). Recusal refers to a judge or justice deciding to "stand down voluntarily," while disqualification refers to instances "involving the statutorily or constitutionally mandated removal of a judge [or justice] upon the request of a moving party or its counsel." *Id.* (footnotes omitted). This occurred initially in the *Olive* case when four of the five active judges in the St. Thomas/St. John Division and similarly one of the four active judges in the St. Croix Division all recused on their own. Similarly, when these criminal cases were filed, the initial Superior Court judge to whom they were assigned decided, *sua sponte*, that she could not be fair and impartial. It is not for this Court to comment upon the propriety of any judge's recusal except to note that in each instance that Superior Court judge, on her or his own, decided that he or she could not be fair and impartial and recused, *sua sponte*. But the Court does agree with de Jongh when he argues that recusal was not required and instead "perhaps brought on by an overly restrictive reading of the recusal statute." (Def. de Jongh Resp. 3.)

■ While this is an issue of first impression in the Virgin Islands, other jurisdictions have held that "[t]he mere fact that a judge was appointed to that position . . . by a person who is now a party, counsel, or potential witness before her will not ordinarily suffice to warrant disqualifying that judge." Flamm, *Judicial Disqualification* § 8.10 (footnotes omitted). *See also Cheney v. U.S. Dist. Ct.*, 541 U.S. 913, 916, 124 S. Ct. 1391, 158 L. Ed. 2d 225 (2004) ("A rule that required Members of this Court to remove themselves from cases in which the official actions of friends were at issue would be utterly disabling. Many Justices have reached this Court precisely because they were friends of the incumbent President or other senior officials — and from the earliest days down to modern times Justices have had close personal relationships with the President and other officers of the Executive"); *In re Exec. Office of the President*, 215 F.3d 25, 25 (D.C. Cir. 2000) ("Hearing a case involving the conduct of the President who appointed me will not create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that my ability to carry out judicial responsibilities with integrity, impartiality, and competence would be impaired" (quotation marks, citation and brackets omitted)). Of course, the difference in the federal courts is that federal judges and justices have the protections of life tenure. *See* U.S. CONST. art. III, § 1 ("The Judges, both of the supreme and inferior Courts, shall hold their Offices during good

Behavior"). But this difference is not crucial here because a retired judge brought back to handle a single case is like a judge with life tenure; how the judge rules on the case has no impact on whether he will be reappointed.

■ More importantly, however, each judge understands that her or his term in office is for six years. *See* 4 V.I.C. § 73 ("The judges of the Superior Court shall hold their offices for a term of six years unless sooner retired or removed"). And only the Governor, with the advice and with the consent of the Legislature, can appoint or reappoint the judges of the Superior Court of the Virgin Islands. *See id.* § 72(a) ("the judges of the superior court shall be appointed by the Governor with the advice and consent of the Legislature. Judges so appointed shall continue in office until their successors are appointed and confirmed or until they are renominated and confirmed"). Moreover, each Superior Court judge, upon taking office, swears or affirms to administer justice faithfully, impartially, and in accordance with the Constitution of the United States, with the laws of the United States applicable to the United States Virgin Islands, and with the laws of the United States Virgin Islands. *See Imbrie v. Marsh*, 3 N.J. 578, 71 A.2d 352, 354 (1950) ("The importance of the oath in judicial proceedings cannot be overestimated; the judge on the bench, the jury in the box, the attorneys at the counsel table, the witness on the stand, the court stenographer taking a record of the proceedings, and even the bailiffs when they retire to guard the jury in its deliberations, are all sworn to do their respective duties before they are permitted to act."). This oath is sacred and each judge is presumed to adhere to it unless and until actual bias or prejudice is shown.

Were we to assume that judges or justices are biased toward the Governor, whether in his favor or not, simply because he exercised the responsibility the people, through the Legislature, entrusted in him concerning the judiciary, we would in essence be adopting a *per se* rule of disqualification: that a current or former judge or justice is disqualified from presiding over any case involving the governor who appointed him and further that a former judge or justice is also disqualified from presiding over any case involving the governor who did not reappoint him. From there the slope would get very slippery.[4]

---

[4] *Cf. Hamlin v. Gov't of the Canal Zone*, 26 F.2d 161, 162 (5th Cir. 1928) (that the president appointed both the governor and the district judge did not disqualify judge from presiding

▮ "The law assumes judicial impartiality." *Walters*, 60 V.I. at 793 (Swan, J., concurring). It is for this reason that bias is not assumed but instead must be shown. Neither implied basis the People put forth, even when taken as true, shows any bias on the part of the undersigned judge. "Before a judge is required to recuse him or herself based on bias, the facts alleged by the party arguing for disqualification must 'reflect a clear probability that the judge is biased against that party.' " *Benjamin*, 56 V.I. at 569 (quoting *Gereau*, 502 F.2d at 932).

## CONCLUSION

For the reasons stated above, the Court finds that People's motion to disqualify must be denied. An appropriate order accompanies this memorandum opinion.

---

over case involving official actions of the governor) ("The fact that a judge is the appointee of an official who appointed to a public office or employment another person whose right to exercise the functions of that office or employment is brought into question in a suit or judicial proceeding does not have the effect of disqualifying such judge to net in that suit or proceeding."); *Jourdan v. Nationsbanc Mortg. Corp.*, 42 P.3d 1072, 1082 (Alaska 2002) ("being appointed by a governor who allegedly was friend of one of the parties docs not in itself constitute a close enough connection to merit recusal of the judge." (footnote omitted)). *But cf. Wallace v. Wallace*, 352 So. 2d 1376, 1377-79 (Ala. 1977) (holding that "totality of the facts" warranted disqualification of judge based on relationship between governor and judge as well as their respective families and governor's appointment of judge to the bench, which all taken together "create[d] an impression that [the judges's] impartiality might reasonably be questioned.").